# EXHIBIT 2

Settlement Agreement and
Mutual Release

# SETTLEMENT AGREEMENT AND MUTUAL RELEASE

THIS AGREEMENT is made and entered into as of the date last executed below (the "Effective Date"), by and between SSC Group, LLC d/b/a Porn Pros ("PornPros") on the one hand, and Borjan Solutions S.L. d/b/a Serviporno.com ("Serviporno"), Borja Mera Urrestarazu ("Borjan"), and Monetia S.L. d/b/a Cumlouder.com and Wamcash ("Monetia") on the other hand.  Serviporno, Borjan, and Monetia are collectively referred to as the "Respondents."  Porn Pros and Respondents are collectively referred to as the "Parties"; individually, each may be referred to as a "Party."

## RECITALS

A. Porn Pros asserted claims relating to intellectual property infringement against Respondents ("Claims"), via demand letter dated April 16, 2013, relating to Respondents' alleged operation of various adult-themed websites, including Serviporno.com, and Cumlouder.com, and any affiliated sites (the "Websites").

B. Respondents have denied liability for the infringement claims, and have asserted that the courts of the United States lack personal jurisdiction over their foreign website operation.  The Parties thereafter agreed to commence informal settlement discussions in a good faith effort to resolve the Claims.

C. Respondents deny liability for any of the Claims asserted by PornPros, and PornPros does not agree United States courts lack personal jurisdiction over Respondents. However, the Parties desire to achieve a speedy resolution of the Claims without incurring the burden and expense of formal litigation.

D. The Parties have determined it to be in their mutual best interests to reduce their agreements to writing.

NOW, THEREFORE, in consideration of the foregoing Recitals, the mutual covenants and agreements contained herein, and further good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## AGREEMENT

1.0   Payment

1.1 Cash Payment

Respondent Serviporno agrees to pay PornPros the sum of twenty-five thousand dollars and no cents ($25,000.00) in one lump sum by September 1, 2013.

Serviporno agrees that it shall pay PornPros interest at the rate of six percent (6%) per annum, or .5% per month if the payment is not received by the date indicated above.

1

The payment shall be in the form of a wire transfer made payable to Randazza Legal Group Trust Account. Instructions are attached to this Agreement.

### 1.2 Advertising/Marketing Considerations

Respondent Monetia agrees to place a hyperlinking graphical advertisement via an IFRAME hosted by Complainant PornPros measuring 950 pixels in width by 250 pixels in height, the content for which shall be provided by Complainant PornPros, in the footer on every page in Respondent Monetia's password-protected member's area (the "Footer Ad"). Respondent Monetia shall display the Footer Ad to all users, from all countries, at all times for 6 months, beginning within 10 days after the Effective Date. Respondent Monetia shall also create a channel for PornPros content within its members' area, which it shall maintain indefinitely, which is to be created within 10 days of the Effective Date. Complainant PornPros reserves the right to inspect Respondent Monetia's password-protected members' area for compliance with this term at any time.

Respondent Monetia shall earn a 50% revenue share of all sales PornPros derives from the Footer Ad; before receiving these sums, Monetia shall sign up as an affiliate with PornPros. The Parties understand that chargebacks are a normal part of business and to be expected in the course of online commerce. However, the Parties agree that any disputes over significantly higher-than-normal chargebacks Complainant PornPros experiences through the Footer Ad shall first be addressed by written communication in a good faith effort to resolve the dispute. If these good-faith written communications fail to acceptably resolve any Party's dispute over chargebacks, the Parties' dispute shall be subject to the dispute resolution provisions found within Section 20 of this Agreement.

## 2.0   Undertakings by PornPros

### 2.1.   Pre-suit Requirements and Protections Against Future Litigation

The Parties acknowledge that this Agreement is intended to resolve all pending issues between the Parties relating to the operation of the Websites, in an effort to both address previous Claims and to prevent future litigation. Therefore, prior to the filing of any future litigation against the Respondents, either individually or collectively, relating to intellectual property rights infringement, PornPros agrees that it will afford Respondents an opportunity to remove any and all allegedly infringing material using the PornPros Removal Form and procedure described in paragraph 3.0 below. So long as Respondents discharge their obligations pursuant to paragraph 3.0, PornPros shall not initiate any legal proceeding against the Respondents, or, their agents, employees, successors or assigns, relating to the allegedly infringing material.

### 2.2.   Removal of Existing Infringing Material

Prior to the execution of this Agreement, PornPros has undertaken diligent efforts to identify any content on the Websites that allegedly violates PornPros' intellectual property rights, and has

2

informed Respondents of the existence of any such material, in an effort to allow Respondents an opportunity to remove such material from the Website. No material belonging to PornPros that was published on the Websites prior to the execution of this Agreement shall form the basis for any intellectual property claim against Respondents, subsequent to the execution of this Agreement.

3.0    Undertakings by Respondents

3.1. Future Notifications of Infringement

Within 10 days of the Effective Date, Respondents shall create a specific web form for use by PornPros for the purpose of identifying allegedly infringing links on the Websites to material owned by PornPros (hereinafter the "Porn Pros Removal Form"), which will allow PornPros to fill in hyperlinks and submit any Website URL it believes to be infringing on its copyrights. Submission of one or more links on the Porn Pros Removal Form will then automatically result in the content being removed from the subject Website, within twenty-four (24) hours of submission of a link to material appearing on one or more of the Websites. The relevant Website user(s) who are responsible for uploading the identified material will be identified as an infringer, consistent with the Websites' Notice & Takedown Policy, and subject to termination under Respondent's Repeat Infringer Policy ("RIP"). ServiPorno shall promptly provide to PornPros links to all files uploaded by any user identified by PornPros as an infringer, so as to enable PornPros to determine if any other identifiable PornPros material, has been uploaded by the user. PornPros shall identify any additional infringing links. Any such material shall also be removed, and Serviporno shall terminate the user as a repeat infringer. Submission of a link on the Porn Pros Removal Form shall constitute a formal Notification of Infringement pursuant to the Digital Millennium Copyright Act ("DMCA"). PornPros may use formal DMCA notices in lieu of this procedure, if deemed necessary, proper, or desirable, but should not use both this method *and* formal DMCA notices for the same link.

3.2. Modification of Repeat Infringer Policy

Within fifteen (15) days of the execution of this Agreement, Serviporno agrees that its RIP shall state that any user who receives more than two (i.e., a total of three or more) final notifications of infringement, as defined in the RIP, shall be terminated as a repeat infringer. A terminated user's email address and username shall be blocked permanently. Any content forming the basis for the termination shall be deleted, and Serviporno shall provide to PornPros links to all files uploaded by the terminated user so as to enable PornPros to review this user's library for any other infringements of PornPros' copyrights. Serviporno shall pay PornPros $500 per clearly-identifiable PornPros video that remains in a suspended member's library more than fourteen (14) days after PornPros notifies ServiPorno of its infringing status, through one of the methods set forth herein, unless ServiPorno can establish that a communications failure prevented it from actually receiving notification of the continued availability of the infringing video on the site. In the event PornPros identifies the existence of such video in such time frame, PornPros will provide notice identifying the URL location of the offending video to Serviporno in accordance with this Agreement, and Serviporno shall issue payment within fifteen (15) days upon PornPros' transmission of notice identifying the infringing video(s).

3.3.  DMCA Subpoena Procedure

After the execution of this Agreement, in the event PornPros submits a link on the Porn Pros Removal Form, and no counter-notification is received from the responsible user within fourteen (14) days, Respondents acknowledge that PornPros shall be entitled to initiate any appropriate court action, and issue a valid DMCA subpoena seeking subscriber information associated with the uploader of the allegedly infringing material.  In the event PornPros serves Serviporno with a valid DMCA subpoena for Website end user information, Serviporno agrees not to challenge the subpoena for lack of personal jurisdiction.  PornPros further agrees that any failure by Serviporno to challenge DMCA subpoenas for lack of personal jurisdiction shall not constitute a waiver or consent to personal jurisdiction of any U.S. state or federal court, and that such actions shall be inadmissible in any legal proceeding by PornPros against Respondents, for the purpose of establishing the existence of personal jurisdiction. Expeditiously upon receipt of the DMCA subpoena, Serviporno shall notify the affected user of the receipt thereof, and provide the user two (2) days within which to notify Serviporno in writing whether the user intends to challenge the validity of the subpoena by way of a motion to quash or other appropriate legal vehicle.  In the event Serviporno receives notice of the end user's intent to challenge the subpoena, Serviporno shall provide the user a period of fourteen (14) days within which to file the necessary court papers.  In the event Serviporno confirms that no legal challenge has been mounted by the end user to the validity of the subpoena within the fourteen (14) day period, it shall release any end user information maintained in its system that is requested by the subpoena, in the form of a subpoena response.  This paragraph imposes no duty upon Serviporno to maintain any specific categories of information associated with the Websites' users, except Internet Protocol ("IP") address logs.

4.0.  Websites' Legal Status

Respondents shall not be considered in breach of this Agreement, and shall not be liable for any legal claims based on infringement of PornPros' copyrights or trademarks, with respect to any PornPros Content appearing on the Websites so long as Respondents comply with the obligations imposed by Section 3.0.  PornPros further agrees that so long as Respondents perform their responsibilities under this Agreement, the operation of the Websites shall not be deemed as infringing by PornPros or violative of PornPros' intellectual property rights.

5.0    Incorporation of Recitals

The above Recitals are incorporated as though fully set forth herein.

6.0    Mutual General Release.

Concurrently with the execution and receipt of payment under this Agreement, except for the obligations arising out of this Agreement, and in consideration of the terms and provisions of the releases and waivers mutually exchanged under the terms hereof, and for other good and valuable

consideration, receipt of all of which is hereby acknowledged, each party to this Agreement hereby acknowledges <u>full and complete satisfaction</u> of any and all claims against the other, and hereby <u>fully and forever releases and discharges</u> each of the other Parties as well as their parent corporations and business entities, subsidiaries, affiliates, heirs, agents, predecessors, successors, partners, directors, officers, employees, executors, trustees, administrators, attorneys, insurance companies, and assigns, past and present and each of them, for any and all claims, warranties, demands, causes of action in law or equity, suits, debts, liens, contracts, agreements, obligations, promises, liability, damages, loss, cost or expense, of any nature whatsoever, known or unknown, fixed or contingent, which any of the said Parties to this agreement ever had, now have or may, shall or can hereinafter have or acquire, from the beginning of the world up through the date of this Release, including, without limitation on the generality of the foregoing, all claims which:

        A.     Arise out of or are in any way connected with or related to the transactions, occurrences, acts or omissions, set forth in the demand letter transmitted by counsel for PornPros on April 16, 2013 (the "Letter"); or

        B.     Arise out of or are in any way connected with or related to any transaction, occurrence, event, act or omission which might have or could have been alleged in connection with the Claims.

7.0    <u>Affirmative Representations by Execution of Agreement</u>

        Each Party represents and warrants to each other as follows:

        a.     Each Party has received independent legal advice from its attorneys, or the opportunity to do so, with respect to the advisability of making the settlement provided for herein and with respect to the advisability of executing this Agreement.

        b.     Other than as set forth in this Agreement, no Party (nor any of its agents, employees, representatives or attorneys) has made any statement or representation to the other regarding any fact relied upon in entering into this Agreement, nor does any Party rely upon any statement, representation or promise to the other (or of any agent, employee, representative or attorney) in executing this Agreement, or in making the settlement provided for herein.

        c.     Each Party has made an investigation of the facts pertaining to the settlement and this Agreement and of all the matters pertaining thereto as deemed necessary.

        d.     Each of the persons executing this Agreement is empowered to do so.

        e.     This Agreement is intended to be final and binding between the Parties hereto, and the Parties warrant and represent to one another that no promises, inducements, representations or

warranties which are not expressly set forth in this Agreement, have been, or will be claimed to have been relied upon in entering into this Agreement.

8.0     Costs/Attorney Fees

        Each Party agrees to bear that Party's own costs relating to this matter, including but not limited to attorneys' fees, court costs, and all other expenses incurred with regard to any matter released pursuant to this Agreement, except in judicial actions to enforce the terms of this Agreement as set forth in Section 16; in such a judicial enforcement action, the prevailing party shall be awarded its costs and reasonable attorneys' fees accrued in connection with the dispute from the non-prevailing party only if the authority adjudicating the dispute expressly finds that the non-prevailing party's claim or defense of a claim was frivolous, vexatious, or undertaken in bad faith.

9.0     Transfer of Rights/Assignment of Claim

        The Parties hereby represent and warrant that they have not heretofore assigned or transferred, or purported to assign or transfer, to any person, corporation or other entity, any claim or cause of action released hereunder.


10.0    Advisement of Parties by Counsel

        The Parties represent that they have been fully advised by their respective legal counsel as to each provision hereof and acknowledge the significance and consequence of this Release and each party expressly consents that this Release shall be given full force and effect according to each and all of its express terms and provisions including those relating to unknown and unsuspected claims, demands and causes of action, if any, as well as those relating to any other claims, demands and causes of action herein specified.

11.0    Successors

        This Agreement is binding and shall inure to the benefit of the Parties hereto and their respective successors and assigns.

12.0    Entire Agreement

        This Agreement and Release constitutes the full, final and only statement of the agreement among the Parties with respect to this subject matter.  There are no agreements, understandings, representations or warranties, oral or written, among any of the Parties, other than those which are expressly set forth herein.  All prior negotiations and agreements between the Parties are superseded hereby, and no Party is relying upon any understanding, promise or agreement between the Parties other than those expressly set forth herein.  This Agreement and Release is an integrated document.

6

13.0   Assumption of Risk

By entering into this Agreement and Release, each Party assumes the risk of any misrepresentation, concealment, or mistake except for the representations and statements expressly made in this Agreement and Release. If any Party should subsequently discover that any fact relied upon by him, her, or it in entering into this Agreement and Release is untrue, or that any fact or facts were concealed from him, her, or it, or that his, her or its understanding of the facts or of the law was incorrect, or that the law presently in effect has changed in a manner which would otherwise affect such Party's rights hereunder; such Party shall not be entitled to any relief whatsoever in such connection or otherwise, including, without limitation on the intended generality of the foregoing, any alleged right or claim to set aside or rescind this Agreement and Release. This Agreement and Release is intended to be and is final and binding between the Parties hereto, regardless of any claims of fraud, misrepresentation, promise made without the intention of performing, concealment of fact, mistake of fact or law, change of law, or of any other circumstance whatsoever.

14.0   Settlement Agreement/Release Deemed Jointly Drafted

This Agreement was jointly negotiated and jointly drafted by the Parties and their respective attorneys and shall not be interpreted or construed in favor or against any Party on the ground that said Party drafted this Agreement.

15.0   Descriptions

The use of headings in this Agreement is only for ease of reference, and the headings have no effect and are not to be considered part of the terms of this Agreement.

16.0   Costs to Enforce Settlement Agreement

The Parties agree that in the event any Party to this Agreement commences a judicial proceeding to enforce any provision of this Agreement, or is required to defend such a judicial proceeding commenced by any Party to this Agreement, the prevailing party shall be awarded its costs and reasonable attorneys' fees accrued in connection with the dispute from the non-prevailing party only if the authority adjudicating the dispute expressly finds that the non-prevailing party's claim or defense of a claim was frivolous, vexatious, or undertaken in bad faith.

17.0   Severability

If any provision of this Agreement is determined to be illegal, invalid or unenforceable by a court or government agency of competent jurisdiction, such provision shall be deemed fully severable, and the balance of the Agreement shall be given full force and effect in accordance with its terms.

7

18.0    Cooperation Clause

All Parties agree to cooperate fully and to execute any and all supplementary documents and to take all additional actions that may be necessary or appropriate to give full force and effect to the basic terms and intent of this Agreement and which are not inconsistent with its terms.

19.0    Writing Required for Amendment, Modification and/or Waiver

No provision hereof may be waived, modified or amended unless in writing and signed by all of the Parties hereto.

20.0    Agreement Governed by Nevada Law; Personal Jurisdiction, Dispute Resolution

This Agreement shall be governed, construed and enforced in accordance with Nevada law. Nothing contained in this Agreement shall constitute consent to personal jurisdiction, or a waiver of any objection to personal jurisdiction that any party may assert in the future.

**20.1 Arbitration.** If a dispute arises between the Parties arising out of or otherwise relating to this Agreement, the Parties shall first meet and negotiate in good faith to attempt to resolve the dispute. If, after meeting in person for informal negotiations, the Parties are unable to resolve the dispute, then either Party may demand that the dispute be submitted to formal mediation, to be held in Clark County, Nevada, in a convenient location agreed to by the Parties. The Parties agree to participate in mediation in a good faith attempt to resolve any and all disputes. The mediator shall be knowledgeable in Internet and intellectual property disputes. If the Parties are unable to resolve the dispute through direct negotiations and/or formal mediation, then, except as otherwise provided herein, either Party must submit the issue to binding arbitration in accordance with applicable Arbitration laws and statutes. Claims subject to arbitration ("Arbitral Claims") shall include, but are not limited to, contract, tort and intellectual property claims of all kinds, and all claims based on any federal, state or local law, statute, or regulation, excepting only claims seeking injunctions, attachment, garnishment, and other equitable relief. The arbitration shall be conducted in the Clark County, Nevada, in a convenient location agreed to by the parties, or absent such agreement, selected by the Arbitrator. The arbitration shall be conducted by a single arbitrator, knowledgeable in Internet and intellectual property disputes. The arbitrator shall be willing to execute an oath of neutrality. The arbitration proceedings shall be confidential.

**20.2 Arbitrator's Authority.** The Arbitrator shall have no authority to award any punitive or exemplary damages; certify a class action; add any parties; vary or ignore the provisions of this Agreement; and shall be bound by governing and applicable law. The arbitrator shall render a written opinion setting forth all material facts and the basis of his or her decision within thirty (30) days of the conclusion of the arbitration proceeding. THE PARTIES HEREBY WAIVE ANY RIGHTS THEY MAY HAVE TO TRIAL BY JURY IN REGARD TO ARBITRAL CLAIMS.

**20.3 No waiver of right to arbitration** -- There shall be no waiver of the right to arbitration unless such waiver is provided affirmatively and in writing by the waiving Party to the other Party. There shall be no implied waiver of this right to arbitration. No acts, including the filing of litigation, shall be construed as a waiver or a repudiation of the right to arbitrate.

## 21.0   Counterparts

This Agreement may be executed in two or more counterparts and by different Parties hereto in separate counterparts, with the same effect as if all Parties had signed the same document. As such counterparts shall be deemed an original, they shall be construed together and shall constitute one and the same instrument. This Agreement may be executed via facsimile signatures, which shall have the same force and effect as if they were original signatures.

## 22.0   Confidentiality

The Parties agree that the existence and terms of this Agreement (the "Confidential Terms") are and shall be kept strictly confidential by the Parties. Except to the extent that any of the Parties reasonably believes it is required by law to disclose the Confidential Terms; or to the extent that any of the Parties is required to disclose the Confidential Terms to its counsel or accountants or to the taxing authorities, tax preparers, or others with respect to tax matters; or to the extent required by subpoena or other order of a court or government body of competent jurisdiction; or in connection with enforcing this Agreement; the Confidential Terms shall remain confidential and shall not be disclosed to anyone for any reason. Further, the Parties (including their undersigned Counsel) agree that they will not comment on the Confidential Terms to any person or entity, except as required for legal or accounting purposes, unless written consent is given by the other side, and that the Parties and their Counsel are bound by the limitations of this Agreement, as set forth in this paragraph.

This Agreement shall not be disclosed by a Party in response to a discovery request or subpoena in any legal proceeding without first giving all other Parties at least twenty (20) days prior written Notice and an opportunity to object to such disclosure in the appropriate forum and manner. If any Motion is filed to prevent the disclosure, then no such disclosure shall be made unless and until the Motion is fully adjudicated and an Order is entered requiring such disclosure. Nothing stated herein is intended to, nor shall be construed as, precluding any of the Parties from objecting to such disclosure and refusing to make such disclosure absent a Court Order requiring such disclosure. Whenever possible, disclosure shall be subject to a suitable Protective Order entered by the applicable Court. Whenever necessary or desirable, this Confidentiality Paragraph No. 22.0 may be cited and quoted by any Party in objecting to or opposing disclosure of this Agreement.

## 23.0   Notices

All Notices of any kind which either Party hereto may require or desire to serve upon any other Party to this Agreement shall be in writing and served upon the other Party by personal delivery, or by

9

mailing a copy thereof by regular mail or certified or registered mail, postage prepaid with return receipt, or via email to the addresses set forth below:

To Respondents:
c/o Lawrence G. Walters, Esq.
Walters Law Group
195 W. Pine Avenue
Longwood, FL 32750
(407) 975-9150
(407) 774-6151 (Fax)
Email: larry@firstamendment.com

To PornPros:

c/o Marc J. Randazza, Esq.
Randazza Legal Group
3625 S. Town Center Drive
Las Vegas, NV 89135
Email: mjr@randazza.com

Service shall be deemed complete on the day of personal delivery or overnight courier delivery or emailing. The addresses to which notices may be sent may be changed by written notice served as provided above by either Party upon the other Parties.


IN WITNESS WHEREOF, the Parties below named have executed this Settlement Agreement and Mutual Release as of the date first above written.


Dated: August 19, 2013    _____

Name:

Title:

For **SSC Group, LLC d/b/a Porn Pros("PornPros")**

10

Dated: August _19_, 2013

Name: Borja  Mera  Urrestarazo

Title:  Owner

For **Borjan Solutions S.L. d/b/a Serviporno.com**

Dated: August _19_, 2013

Name: Borja Mera Urrestarazu

Dated: August _19_, 2013

Name: Borja  Mera  Urrestarazo

Title:  Owner

For:  **Monetia S.L. d/b/a Cumlouder.com and Wamcash**

**Acknowledged By:**

**Counsel for Respondents**

**Counsel for PornPros**

11

A-PDF Merger DEMO : Purchase from www.A-PDF.com to remove the watermark

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

THIS AGREEMENT is made and entered into as of the date last executed below (the "Effective Date"), by and between SSC Group, LLC d/b/a Porn Pros ("PornPros") on the one hand, and Borjan Solutions S.L. d/b/a Serviporno.com ("Serviporno"), Borja Mera Urrestarazu ("Borjan"), and Monetia S.L. d/b/a Cumlouder.com and Wamcash ("Monetia") on the other hand.  Serviporno, Borjan, and Monetia are collectively referred to as the "Respondents."  Porn Pros and Respondents are collectively referred to as the "Parties"; individually, each may be referred to as a "Party."

## RECITALS

A. Porn Pros asserted claims relating to intellectual property infringement against Respondents ("Claims"), via demand letter dated April 16, 2013, relating to Respondents' alleged operation of various adult-themed websites, including Serviporno.com, and Cumlouder.com, and any affiliated sites (the "Websites").
B. Respondents have denied liability for the infringement claims, and have asserted that the courts of the United States lack personal jurisdiction over their foreign website operation.  The Parties thereafter agreed to commence informal settlement discussions in a good faith effort to resolve the Claims.
C. Respondents deny liability for any of the Claims asserted by PornPros, and PornPros does not agree United States courts lack personal jurisdiction over Respondents.  However, the Parties desire to achieve a speedy resolution of the Claims without incurring the burden and expense of formal litigation.
D. The Parties have determined it to be in their mutual best interests to reduce their agreements to writing.

NOW, THEREFORE, in consideration of the foregoing Recitals, the mutual covenants and agreements contained herein, and further good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## AGREEMENT

1.0     Payment

1.1 Cash Payment

Respondent Serviporno agrees to pay PornPros the sum of twenty-five thousand dollars and no cents ($25,000.00) in one lump sum by September 1, 2013.

Serviporno agrees that it shall pay PornPros interest at the rate of six percent (6%) per annum, or .5% per month if the payment is not received by the date indicated above.

1

The payment shall be in the form of a wire transfer made payable to Randazza Legal Group Trust Account. Instructions are attached to this Agreement.

### 1.2 Advertising/Marketing Considerations

Respondent Monetia agrees to place a hyperlinking graphical advertisement via an IFRAME hosted by Complainant PornPros measuring 950 pixels in width by 250 pixels in height, the content for which shall be provided by Complainant PornPros, in the footer on every page in Respondent Monetia's password-protected member's area (the "Footer Ad"). Respondent Monetia shall display the Footer Ad to all users, from all countries, at all times for 6 months, beginning within 10 days after the Effective Date. Respondent Monetia shall also create a channel for PornPros content within its members' area, which it shall maintain indefinitely, which is to be created within 10 days of the Effective Date. Complainant PornPros reserves the right to inspect Respondent Monetia's password-protected members' area for compliance with this term at any time.

Respondent Monetia shall earn a 50% revenue share of all sales PornPros derives from the Footer Ad; before receiving these sums, Monetia shall sign up as an affiliate with PornPros. The Parties understand that chargebacks are a normal part of business and to be expected in the course of online commerce. However, the Parties agree that any disputes over significantly higher-than-normal chargebacks Complainant PornPros experiences through the Footer Ad shall first be addressed by written communication in a good faith effort to resolve the dispute. If these good-faith written communications fail to acceptably resolve any Party's dispute over chargebacks, the Parties' dispute shall be subject to the dispute resolution provisions found within Section 20 of this Agreement.

## 2.0    Undertakings by PornPros

### 2.1.  Pre-suit Requirements and Protections Against Future Litigation

The Parties acknowledge that this Agreement is intended to resolve all pending issues between the Parties relating to the operation of the Websites, in an effort to both address previous Claims and to prevent future litigation. Therefore, prior to the filing of any future litigation against the Respondents, either individually or collectively, relating to intellectual property rights infringement, PornPros agrees that it will afford Respondents an opportunity to remove any and all allegedly infringing material using the PornPros Removal Form and procedure described in paragraph 3.0 below. So long as Respondents discharge their obligations pursuant to paragraph 3.0, PornPros shall not initiate any legal proceeding against the Respondents, or, their agents, employees, successors or assigns, relating to the allegedly infringing material.

2

## 2.2. Removal of Existing Infringing Material

Prior to the execution of this Agreement, PornPros has undertaken diligent efforts to identify any content on the Websites that allegedly violates PornPros' intellectual property rights, and has informed Respondents of the existence of any such material, in an effort to allow Respondents an opportunity to remove such material from the Website. No material belonging to PornPros that was published on the Websites prior to the execution of this Agreement shall form the basis for any intellectual property claim against Respondents, subsequent to the execution of this Agreement.

## 3.0   Undertakings by Respondents

### 3.1.  Future Notifications of Infringement

Within 10 days of the Effective Date, Respondents shall create a specific web form for use by PornPros for the purpose of identifying allegedly infringing links on the Websites to material owned by PornPros (hereinafter the "Porn Pros Removal Form"), which will allow PornPros to fill in hyperlinks and submit any Website URL it believes to be infringing on its copyrights. Submission of one or more links on the Porn Pros Removal Form will then automatically result in the content being removed from the subject Website, within twenty-four (24) hours of submission of a link to material appearing on one or more of the Websites. The relevant Website user(s) who are responsible for uploading the identified material will be identified as an infringer, consistent with the Websites' Notice & Takedown Policy, and subject to termination under Respondent's Repeat Infringer Policy ("RIP"). ServiPorno shall promptly provide to PornPros links to all files uploaded by any user identified by PornPros as an infringer, so as to enable PornPros to determine if any other identifiable PornPros material, has been uploaded by the user. PornPros shall identify any additional infringing links. Any such material shall also be removed, and Serviporno shall terminate the user as a repeat infringer. Submission of a link on the Porn Pros Removal Form shall constitute a formal Notification of Infringement pursuant to the Digital Millennium Copyright Act ("DMCA"). PornPros may use formal DMCA notices in lieu of this procedure, if deemed necessary, proper, or desirable, but should not use both this method and formal DMCA notices for the same link.

### 3.2.  Modification of Repeat Infringer Policy

Within fifteen (15) days of the execution of this Agreement, Serviporno agrees that its RIP shall state that any user who receives more than two (i.e., a total of three or more) final notifications of infringement, as defined in the RIP, shall be terminated as a repeat infringer. A terminated user's email address and username shall be blocked permanently. Any content forming the basis for the termination shall be deleted, and Serviporno shall provide to PornPros links to all files uploaded by the terminated user so as to enable PornPros to review this user's library for any other infringements of PornPros' copyrights. Serviporno shall pay PornPros $500 per clearly-identifiable PornPros video that remains in a suspended member's library more than fourteen (14) days after PornPros notifies ServiPorno of its infringing status, through one of the methods set forth herein, unless ServiPorno can establish that a communications failure prevented it from actually receiving notification of the continued availability of the infringing video on the site. In the event PornPros identifies the existence of such video in such time frame, PornPros will provide notice identifying the URL location of the

3

offending video to Serviporno in accordance with this Agreement, and Serviporno shall issue payment within fifteen (15) days upon PornPros' transmission of notice identifying the infringing video(s).

### 3.3. DMCA Subpoena Procedure

After the execution of this Agreement, in the event PornPros submits a link on the Porn Pros Removal Form, and no counter-notification is received from the responsible user within fourteen (14) days, Respondents acknowledge that PornPros shall be entitled to initiate any appropriate court action, and issue a valid DMCA subpoena seeking subscriber information associated with the uploader of the allegedly infringing material. In the event PornPros serves Serviporno with a valid DMCA subpoena for Website end user information, Serviporno agrees not to challenge the subpoena for lack of personal jurisdiction. PornPros further agrees that any failure by Serviporno to challenge DMCA subpoenas for lack of personal jurisdiction shall not constitute a waiver or consent to personal jurisdiction of any U.S. state or federal court, and that such actions shall be inadmissible in any legal proceeding by PornPros against Respondents, for the purpose of establishing the existence of personal jurisdiction. Expeditiously upon receipt of the DMCA subpoena, Serviporno shall notify the affected user of the receipt thereof, and provide the user two (2) days within which to notify Serviporno in writing whether the user intends to challenge the validity of the subpoena by way of a motion to quash or other appropriate legal vehicle. In the event Serviporno receives notice of the end user's intent to challenge the subpoena, Serviporno shall provide the user a period of fourteen (14) days within which to file the necessary court papers. In the event Serviporno confirms that no legal challenge has been mounted by the end user to the validity of the subpoena within the fourteen (14) day period, it shall release any end user information maintained in its system that is requested by the subpoena, in the form of a subpoena response. This paragraph imposes no duty upon Serviporno to maintain any specific categories of information associated with the Websites' users, except Internet Protocol ("IP") address logs.

### 4.0. Websites' Legal Status

Respondents shall not be considered in breach of this Agreement, and shall not be liable for any legal claims based on infringement of PornPros' copyrights or trademarks, with respect to any PornPros Content appearing on the Websites so long as Respondents comply with the obligations imposed by Section 3.0. PornPros further agrees that so long as Respondents perform their responsibilities under this Agreement, the operation of the Websites shall not be deemed as infringing by PornPros or violative of PornPros' intellectual property rights.

### 5.0  Incorporation of Recitals

The above Recitals are incorporated as though fully set forth herein.

### 6.0  Mutual General Release.

4

Concurrently with the execution and receipt of payment under this Agreement, except for the obligations arising out of this Agreement, and in consideration of the terms and provisions of the releases and waivers mutually exchanged under the terms hereof, and for other good and valuable consideration, receipt of all of which is hereby acknowledged, each party to this Agreement hereby acknowledges full and complete satisfaction of any and all claims against the other, and hereby fully and forever releases and discharges each of the other Parties as well as their parent corporations and business entities, subsidiaries, affiliates, heirs, agents, predecessors, successors, partners, directors, officers, employees, executors, trustees, administrators, attorneys, insurance companies, and assigns, past and present and each of them, for any and all claims, warranties, demands, causes of action in law or equity, suits, debts, liens, contracts, agreements, obligations, promises, liability, damages, loss, cost or expense, of any nature whatsoever, known or unknown, fixed or contingent, which any of the said Parties to this agreement ever had, now have or may, shall or can hereinafter have or acquire, from the beginning of the world up through the date of this Release, including, without limitation on the generality of the foregoing, all claims which:

A.     Arise out of or are in any way connected with or related to the transactions, occurrences, acts or omissions, set forth in the demand letter transmitted by counsel for PornPros on April 16, 2013 (the "Letter"); or

B.     Arise out of or are in any way connected with or related to any transaction, occurrence, event, act or omission which might have or could have been alleged in connection with the Claims.

## 7.0     Affirmative Representations by Execution of Agreement

Each Party represents and warrants to each other as follows:

a.     Each Party has received independent legal advice from its attorneys, or the opportunity to do so, with respect to the advisability of making the settlement provided for herein and with respect to the advisability of executing this Agreement.

b.     Other than as set forth in this Agreement, no Party (nor any of its agents, employees, representatives or attorneys) has made any statement or representation to the other regarding any fact relied upon in entering into this Agreement, nor does any Party rely upon any statement, representation or promise to the other (or of any agent, employee, representative or attorney) in executing this Agreement, or in making the settlement provided for herein.

c.     Each Party has made an investigation of the facts pertaining to the settlement and this Agreement and of all the matters pertaining thereto as deemed necessary.

d.     Each of the persons executing this Agreement is empowered to do so.

5

e.    This Agreement is intended to be final and binding between the Parties hereto, and the Parties warrant and represent to one another that no promises, inducements, representations or warranties which are not expressly set forth in this Agreement, have been, or will be claimed to have been relied upon in entering into this Agreement.

## 8.0    Costs/Attorney Fees

Each Party agrees to bear that Party's own costs relating to this matter, including but not limited to attorneys' fees, court costs, and all other expenses incurred with regard to any matter released pursuant to this Agreement, except in judicial actions to enforce the terms of this Agreement as set forth in Section 16; in such a judicial enforcement action, the prevailing party shall be awarded its costs and reasonable attorneys' fees accrued in connection with the dispute from the non-prevailing party only if the authority adjudicating the dispute expressly finds that the non-prevailing party's claim or defense of a claim was frivolous, vexatious, or undertaken in bad faith.

## 9.0    Transfer of Rights/Assignment of Claim

The Parties hereby represent and warrant that they have not heretofore assigned or transferred, or purported to assign or transfer, to any person, corporation or other entity, any claim or cause of action released hereunder.

## 10.0    Advisement of Parties by Counsel

The Parties represent that they have been fully advised by their respective legal counsel as to each provision hereof and acknowledge the significance and consequence of this Release and each party expressly consents that this Release shall be given full force and effect according to each and all of its express terms and provisions including those relating to unknown and unsuspected claims, demands and causes of action, if any, as well as those relating to any other claims, demands and causes of action herein specified.

## 11.0    Successors

This Agreement is binding and shall inure to the benefit of the Parties hereto and their respective successors and assigns.

## 12.0    Entire Agreement

This Agreement and Release constitutes the full, final and only statement of the agreement among the Parties with respect to this subject matter.  There are no agreements, understandings, representations or warranties, oral or written, among any of the Parties, other than those which are expressly set forth herein.  All prior negotiations and agreements between the Parties are superseded

6

hereby, and no Party is relying upon any understanding, promise or agreement between the Parties other than those expressly set forth herein. This Agreement and Release is an integrated document.

### 13.0   Assumption of Risk

By entering into this Agreement and Release, each Party assumes the risk of any misrepresentation, concealment, or mistake except for the representations and statements expressly made in this Agreement and Release. If any Party should subsequently discover that any fact relied upon by him, her, or it in entering into this Agreement and Release is untrue, or that any fact or facts were concealed from him, her, or it, or that his, her or its understanding of the facts or of the law was incorrect, or that the law presently in effect has changed in a manner which would otherwise affect such Party's rights hereunder; such Party shall not be entitled to any relief whatsoever in such connection or otherwise, including, without limitation on the intended generality of the foregoing, any alleged right or claim to set aside or rescind this Agreement and Release. This Agreement and Release is intended to be and is final and binding between the Parties hereto, regardless of any claims of fraud, misrepresentation, promise made without the intention of performing, concealment of fact, mistake of fact or law, change of law, or of any other circumstance whatsoever.

### 14.0   Settlement Agreement/Release Deemed Jointly Drafted

This Agreement was jointly negotiated and jointly drafted by the Parties and their respective attorneys and shall not be interpreted or construed in favor or against any Party on the ground that said Party drafted this Agreement.

### 15.0   Descriptions

The use of headings in this Agreement is only for ease of reference, and the headings have no effect and are not to be considered part of the terms of this Agreement.

### 16.0   Costs to Enforce Settlement Agreement

The Parties agree that in the event any Party to this Agreement commences a judicial proceeding to enforce any provision of this Agreement, or is required to defend such a judicial proceeding commenced by any Party to this Agreement, the prevailing party shall be awarded its costs and reasonable attorneys' fees accrued in connection with the dispute from the non-prevailing party only if the authority adjudicating the dispute expressly finds that the non-prevailing party's claim or defense of a claim was frivolous, vexatious, or undertaken in bad faith.

7



### 17.0   Severability

If any provision of this Agreement is determined to be illegal, invalid or unenforceable by a court or government agency of competent jurisdiction, such provision shall be deemed fully severable, and the balance of the Agreement shall be given full force and effect in accordance with its terms.

### 18.0   Cooperation Clause

All Parties agree to cooperate fully and to execute any and all supplementary documents and to take all additional actions that may be necessary or appropriate to give full force and effect to the basic terms and intent of this Agreement and which are not inconsistent with its terms.

### 19.0   Writing Required for Amendment, Modification and/or Waiver

No provision hereof may be waived, modified or amended unless in writing and signed by all of the Parties hereto.

### 20.0   Agreement Governed by Nevada Law; Personal Jurisdiction, Dispute Resolution

This Agreement shall be governed, construed and enforced in accordance with Nevada law. Nothing contained in this Agreement shall constitute consent to personal jurisdiction, or a waiver of any objection to personal jurisdiction that any party may assert in the future.

1.1   Arbitration. If a dispute arises between the Parties arising out of or otherwise relating to this Agreement, the Parties shall first meet and negotiate in good faith to attempt to resolve the dispute. If, after meeting in person for informal negotiations, the Parties are unable to resolve the dispute, then either Party may demand that the dispute be submitted to formal mediation, to be held in Clark County, Nevada, in a convenient location agreed to by the Parties. The Parties agree to participate in mediation in a good faith attempt to resolve any and all disputes. The mediator shall be knowledgeable in Internet and intellectual property disputes. If the Parties are unable to resolve the dispute through direct negotiations and/or formal mediation, then, except as otherwise provided herein, either Party must submit the issue to binding arbitration in accordance with applicable Arbitration laws and statutes. Claims subject to arbitration ("Arbitral Claims") shall include, but are not limited to, contract, tort and intellectual property claims of all kinds, and all claims based on any federal, state or local law, statute, or regulation, excepting only claims seeking injunctions, attachment, garnishment, and other equitable relief. The arbitration shall be conducted in the Clark County, Nevada, in a convenient location agreed to by the parties, or absent such agreement, selected by the Arbitrator. The arbitration shall be conducted by a single arbitrator, knowledgeable in Internet and intellectual property disputes. The arbitrator shall be willing to execute an oath of neutrality.  The arbitration proceedings shall be confidential.

8

1.2 Arbitrator's Authority. The Arbitrator shall have no authority to award any punitive or exemplary damages; certify a class action; add any parties; vary or ignore the provisions of this Agreement; and shall be bound by governing and applicable law. The arbitrator shall render a written opinion setting forth all material facts and the basis of his or her decision within thirty (30) days of the conclusion of the arbitration proceeding. THE PARTIES HEREBY WAIVE ANY RIGHTS THEY MAY HAVE TO TRIAL BY JURY IN REGARD TO ARBITRAL CLAIMS.

1.3 No waiver of right to arbitration -- There shall be no waiver of the right to arbitration unless such waiver is provided affirmatively and in writing by the waiving Party to the other Party. There shall be no implied waiver of this right to arbitration. No acts, including the filing of litigation, shall be construed as a waiver or a repudiation of the right to arbitrate.

## 21.0  Counterparts

This Agreement may be executed in two or more counterparts and by different Parties hereto in separate counterparts, with the same effect as if all Parties had signed the same document. As such counterparts shall be deemed an original, they shall be construed together and shall constitute one and the same instrument. This Agreement may be executed via facsimile signatures, which shall have the same force and effect as if they were original signatures.

## 22.0  Confidentiality

The Parties agree that the existence and terms of this Agreement (the "Confidential Terms") are and shall be kept strictly confidential by the Parties. Except to the extent that any of the Parties reasonably believes it is required by law to disclose the Confidential Terms; or to the extent that any of the Parties is required to disclose the Confidential Terms to its counsel or accountants or to the taxing authorities, tax preparers, or others with respect to tax matters; or to the extent required by subpoena or other order of a court or government body of competent jurisdiction; or in connection with enforcing this Agreement; the Confidential Terms shall remain confidential and shall not be disclosed to anyone for any reason. Further, the Parties (including their undersigned Counsel) agree that they will not comment on the Confidential Terms to any person or entity, except as required for legal or accounting purposes, unless written consent is given by the other side, and that the Parties and their Counsel are bound by the limitations of this Agreement, as set forth in this paragraph.

This Agreement shall not be disclosed by a Party in response to a discovery request or subpoena in any legal proceeding without first giving all other Parties at least twenty (20) days prior written Notice and an opportunity to object to such disclosure in the appropriate forum and manner. If any Motion is filed to prevent the disclosure, then no such disclosure shall be made unless and until the Motion is fully adjudicated and an Order is entered requiring such disclosure. Nothing stated herein is intended to, nor shall be construed as, precluding any of the Parties from objecting to such disclosure and refusing to make such disclosure absent a Court Order requiring such disclosure. Whenever

9

possible, disclosure shall be subject to a suitable Protective Order entered by the applicable Court. Whenever necessary or desirable, this Confidentiality Paragraph No. 22.0 may be cited and quoted by any Party in objecting to or opposing disclosure of this Agreement.

23.0  Notices

All Notices of any kind which either Party hereto may require or desire to serve upon any other Party to this Agreement shall be in writing and served upon the other Party by personal delivery, or by mailing a copy thereof by regular mail or certified or registered mail, postage prepaid with return receipt, or via email to the addresses set forth below:

To Respondents:
c/o Lawrence G. Walters, Esq.
Walters Law Group
195 W. Pine Avenue
Longwood, FL 32750
(407) 975-9150
(407) 774-6151 (Fax)
Email: larry@firstamendment.com

To PornPros:

c/o Marc J. Randazza, Esq.
Randazza Legal Group
3625 S. Town Center Drive
Las Vegas, NV 89135
Email: mjr@randazza.com

Service shall be deemed complete on the day of personal delivery or overnight courier delivery or emailing. The addresses to which notices may be sent may be changed by written notice served as provided above by either Party upon the other Parties.

IN WITNESS WHEREOF, the Parties below named have executed this Settlement Agreement and Mutual Release as of the date first above written.

Dated: August 26, 2013 _____

Name:  ADAM  SILVERMAN

10

Title $\mathcal{P}\mathit{RES}\mathit{P}\mathit{EN}\mathit{T}$

For SSC Group, LLC d/b/a Porn Pros(" PornPros" )

Dated: August ____, 2013     _____

Name:

Title: Owner

For Borjan Solutions S.L. d/b/a Serviporno.com

Dated: August ____, 2013     _____

Name: Borja Mera Urrestarazu

Dated: August ____, 2013     _____

Name:

Title: Owner

For: Monetia S.L. d/b/a Cumlouder.com and Wamcash

Acknowledged By:

Counsel for Respondents                    Counsel for PornPros

_____

11

02