RANDAZZA LEGAL GROUP, PLLC
Marc J. Randazza (NV Bar No. 12265)
Ronald D. Green (NV Bar No. 7360)
3625 S. Town Center Drive, Suite 150
Las Vegas, NV 89135
Telephone: 702-420-2001
Facsimile: 305-437-7662
ecf@randazza.com

*Attorneys for Plaintiff,*
*AMA Multimedia, LLC*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| AMA MULTIMEDIA, LLC, a Nevada limited liability company, | Case No.: 2:15-cv-01673-JCM-GWF |
| Plaintiff, | **MOTION TO COMPEL ARBITRATION** |
| v. | |
| BORJAN SOLUTIONS, S.L. d/b/a SERVIPORNO, a Spanish company; and BORJAN MERA URRESTARAZU, an individual, | |
| Defendants. | |

Plaintiff AMA Multimedia hereby moves this Court to compel Defendants Borjan Solutions, S.L. d/b/a Serviporno ("Serviporno") and Borjan Mera Urrestarazu ("Borjan") to arbitrate the claims of the instant litigation pursuant to the Federal Arbitration Act, 9 U.S.C. § 4, and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, Article II(3), per 9 U.S.C. § 206. Plaintiff further requests that this Court appoint ADR Services, Inc., as the arbitration service, pursuant to 9 U.S.C. §§ 5 and 206, and that this matter be stayed until such arbitration has been had, pursuant to 9 U.S.C. § 3. Plaintiff

AMA filed this case only after Defendants unreasonably frustrated all of Plaintiff's attempts to arbitrate this matter.  However, based upon Defendants' Motion to Dismiss and for an Award of Contractual Costs and Fees (Doc. No. 7), all parties apparently *now* agree that this dispute should be arbitrated pursuant to their existing Settlement Agreement.

This was Plaintiff's position from the start, but the Defendant and his counsel refused to cooperate or participate in Arbitration.

In support hereof, Plaintiff refers this Honorable Court to the below memorandum of points and authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

As set forth in the Amended Complaint (Doc. No. 9), Plaintiff AMA Multimedia, LLC, and Defendants Borjan Solutions, S.L. d/b/a Serviporno and Borjan Mera Urrestarazu entered into an agreement on or about August 19, 2013, to resolve a then-pending dispute between them.  Defendants admit that "(1) the parties voluntarily entered into a settlement agreement, (2) the settlement agreement contains a binding arbitration clause, and (3) the binding arbitration clause covers all of the claims raised in the Plaintiff's complaint." Doc. No. 7, at 2.[1]  Thus, the arbitration agreement should be enforced and Defendants should be compelled to arbitrate.

### 1.0    Factual Background

As alleged in the Amended Complaint, Plaintiff produces and distributes adult-oriented films.  Doc. No. 9, ¶ 1.  Defendants own and operate a series of websites. *Id*. at ¶¶ 2, 3, 56, 59, & 60.  Plaintiff has alleged that Defendants distributed Plaintiff's copyrighted works without permission. *Id*. at ¶¶ 27, 65, & 66.

---

[1] Although Defendants' admission was directed to the claims in the original Complaint (Doc. No. 1), the Amended Complaint contains the same claims, adding only an additional count to compel arbitration, along with the relevant predicate facts.

RANDAZZA | LEGAL GROUP

1  Seven claims arising from and related to Defendants' infringement are the
2  subject of the instant lawsuit.  (*See generally id.*)

3      Previously, Plaintiff's predecessor-in-interest, SSC Group, LLC, demanded
4  that Defendants cease their copyright infringement on Defendants' Serviporno
5  website and threatened to file claims against Defendants for that infringement.
6  (*See id.* at ¶¶ 13, 21, & 22.)  However, the parties entered settlement discussions
7  before a suit could be filed, and those discussions resulted in a Settlement
8  Agreement and Mutual Release ("Agreement") that SSC Group was hopeful
9  would resolve all issues between the parties.  (*See id.* at ¶¶ 24 & 25; *see also*
10 **Exhibit 1**.)  Such Agreement inures to the benefit of Plaintiff AMA as SSC Group's
11 successor-in-interest.  (*See* **Exhibit 1**, at ¶ 11.0; *see also* Doc. No. 7 at 8-9 (referring
12 to Plaintiff as a "party" who "agreed" to the "express terms" of the Agreement).)
13 The Agreement contained a provision stating that future disputes would be
14 decided by informal negotiation, then formal mediation, then binding
15 arbitration. (*See* **Exhibit 1**, at ¶ 20.1.)

16     For approximately one year after the execution of the Agreement, it
17 appeared that Defendants' infringements had ceased.  However, in late 2014,
18 Plaintiff discovered that Defendants had renewed their infringing activities on
19 the Serviporno site, as well as other sites operated and controlled by
20 Defendants.  (*See* Doc. No. 9 at ¶ 27.)  On or about December 23, 2014, Plaintiff
21 sent Defendants a cease and desist letter pursuant to paragraph 3.1 of the
22 Agreement.  (*See id.* at ¶ 35; *see also* **Exhibit 2** at pp. 14-15.)

23     Given the success of previous negotiations with Defendants, Plaintiff AMA
24 was hopeful that the matter could be resolved informally and pursuant to the
25 provisions of the Agreement.  Therefore, Plaintiff scheduled informal negotiations
26 in Las Vegas Nevada, which occurred on January 23, 2015.  (*See* Doc. No. 9 at
27 ¶ 78.)  These negotiations were unsuccessful.  (*See id.*)

1    Subsequently, on January 26, 2015, Plaintiff applied to this Court for a

2    subpoena pursuant to the Digital Millennium Copyright Act, as permitted by

3    ¶ 3.3 of the Agreement.  (*See* **Exhibit 2** at 4-15; **Exhibit 1**, ¶ 3.3.)  This Court issued

4    the subpoena on January 26, 2015.   (*See In re AMA Multimedia, LLC:*

5    *Identification of John Does 1-256 Pursuant to the DMCA*, Docket No. 2:15-ms-

6    00005 (Jan. 26, 2015).)   Defendants responded to the subpoena on or about

7    March 11, 2015, without formal objection to this Court.   (*See* **Exhibit 2** at 2.)

8    Although Defendants' response lodged informal improper objections,[2] at no

9    time was compliance with the terms of the Agreement giving rise to the

10   subpoena challenged.   (*See* id.)   Nevertheless, Defendants' response was

11   insufficient and failed to provide all information requested by the subpoena.

12   (*See* Doc. No. 9 at ¶¶ 49, 51, & 52.)

13   Realizing that informal settlement negotiations would be unsuccessful,

14   Plaintiff AMA scheduled formal mediation pursuant to ¶ 20.1 of the Agreement,

15   which occurred on May 21, 2015.  (*See* Doc. No. 9 at ¶ 79.)  The mediation did

16   not result in a resolution.  (*See id*.)  In fact, Defendants refused to participate in

17   good faith – failing to attend in person, and refusing to provide a mediation

18   statement to the mediator.

19   The Agreement, at ¶ 20.1, states, in relevant part:

20   If the Parties are unable to resolve the dispute through direct
     negotiations and/or formal mediation, then except as otherwise
21   provided herein, either Party must submit the issue to binding
     arbitration in accordance with applicable Arbitration laws and
22   statutes.   Claims subject to arbitration ("Arbitral Claims") shall
     include, but are not limited to, contract, tort and intellectual
23   property claims of all kinds, and all claims based on any federal,
24   state or local law, statute, or regulation, excepting only claims
     seeking injunctions, attachment, garnishment, and other equitable
25   relief.  The arbitration shall be conducted in the [sic] Clark County,

26   ———————————————————

27   [2] Defendants raised a question of personal jurisdiction, though the Agreement explicitly stated
     they "agree[] not to challenge the subpoena for lack of personal jurisdiction." **Exhibit 1** at ¶ 3.3.

RANDAZZA | LEGAL GROUP

> Nevada, in a convenient location agreed to by the parties, or absent such agreement, selected by the Arbitrator. The arbitration shall be conducted by a single arbitrator, knowledgeable in Internet and intellectual property disputes. The arbitrator shall be willing to execute an oath of neutrality. The arbitration proceedings shall be confidential.

*See* **Exhibit 1**.

Having met all predicate requirements of ¶¶ 2.1 & 20.1 of the Agreement, Plaintiff AMA attempted to initiate arbitration. On or about June 26, 2015, Plaintiff's counsel sent correspondence to Defendants' counsel suggesting 3 well-known and respected Nevada arbitrators – The Honorable Philip Pro, Ara Shirinian, and Joseph Bongiovi. (*See* Correspondence from Ronald Green to Val Gurvits, dated June 26, 2015, attached as **Exhibit 3**.) Defendants summarily rejected all 3 suggestions. (*See* Email Correspondence dated June 27, 2015, attached as **Exhibit 4**.)

For the first time, Defendants also suggested that AMA had not met the conditions precedent to initiate dispute proceedings in the Agreement, specifically that Plaintiff had not provided Defendants with the opportunity to remove unauthorized third party content before formally pursuing its claims. (*See* **Exhibit 1**, at ¶ 2.1.) However, Plaintiff have copious evidence that Defendants were posting the infringing content themselves, including but not limited to:

- Defendant Borjan had previously admitted that he uploaded the infringing content himself on a public message board (Doc. No. 9, at ¶¶ 17-18);
- Plaintiff tested Serviporno's third party upload tool and found that it did not work, even though new infringing content allegedly posted by third parties appeared on the site daily (*Id.*, at ¶¶ 28-29);

- Defendants obscured Serviporno's "sign in" and "registration links," making it difficult for Internet users to find them (*Id.*, at ¶ 32);

- Many of the videos on Serviporno exceeded the 100MB upload limit contained on the site, indicating that third party users could not have uploaded them (*Id.*, at ¶ 33);

- Defendants operate over 20 websites that largely feature the same content with unique titles depending on the site, and it strains credibility to argue that an Internet user would upload videos to multiple Defendant websites, taking the time to give each video a unique title on each website (*Id.*, at ¶¶ 63-65).

Given Defendants' roadblocks to arbitration, Plaintiff AMA opted to simply file an arbitration complaint rather than continue to negotiate with Defendants regarding an appropriate arbitration service.  On or about August 3, 2015, Plaintiff transmitted a Demand for Arbitration and an Arbitration Complaint to ADR Services and to counsel for Defendants.  (*See id.* at ¶ 81; *see also* **Exhibit 5**, Demand for Arbitration and Arbitration Complaint; *and see* **Exhibit 6**, Declaration of Trey A. Rothell, at ¶ 6.)   ADR Services, Inc. is a nationally recognized arbitration service.  (*See, e.g., Missud v. San Francisco Superior Court*, 2012 U.S. Dist. LEXIS 17302, *5 (N.D. Cal. Feb. 13, 2012); *Nat'l Network of Accountants Inv. Advisors, Inc. v. Gray*, 693 F. Supp. 2d 200, 201 (E.D.N.Y. 2010).)

On multiple occasions, ADR Services' case manager informed Plaintiff's counsel that ADR Services would not take the case unless Defendants agreed to participate in the arbitration or a court order required them to participate.  (*See* **Exhibit 6** at ¶¶ 4 & 8-9.)  The case manager stated that ADR Services was calling Defendants' counsel later that day to discuss.  (*See id* at ¶ 7.)   After hearing nothing for one week, Plaintiff's counsel spoke with ADR Services' case manager on August 18, 2015.  (*See id* at ¶ 8.)  The case manager informed counsel that he

had called Defendants' counsel regarding the arbitration but that Defendants' counsel had not called him back.  (*See id* at ¶ 8-10.)  The case manager stated that it was his impression that Defendants' counsel was ignoring his calls and would not participate in the arbitration.  (*See id*. at ¶ 8-10.)

On or about August 19, 2015, Defendants transmitted a document entitled "Motion to Dismiss Arbitration for Complainant's Failure to Meet Conditions Precedent to the Filing of Arbitration and for the Award of Contractual Attorneys' Fees" to Plaintiff's counsel and ADR Services.  (*See id*.)  ADR Services informed Plaintiff's counsel on August 25, 2015 that it could not take the matter.  (*See id*. at ¶ 14.)  Considering that Defendants thwarted Plaintiff's attempts to arbitrate every step of the way, Plaintiff was with no choice but to assert its claims against Defendants in this Court.  (*See* Doc. No. 9 at ¶ 90.)  However, *now* Defendants appear willing to arbitrate.  (*See* Doc. No. 7 at 6 & 20.)  Accordingly, this Motion should be, by all logical measures, uncontroversial.  However, given the fact that Defendants are not interested in having this matter adjudicated at all, this Court should anticipate either a change in position, or some other bizarre position calculated to frustrate the advancement of the case.

**2.0   Legal Analysis**

**2.1   Defendants Should Be Compelled to Arbitrate**

Defendants argue that the complaint should be arbitrated.  Doc. No. 7 at 6 & 20.  Plaintiff agrees.  Plaintiff attempted to arbitrate this matter on numerous occasions and was rebuffed by Defendants at every turn.  Given Defendants' apparent change of heart, this Motion should not present much controversy.

The Federal Arbitration Act ("FAA") favors rigorously enforcing arbitration agreements.  *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983); *Hall St. Assocs., L.L.C. v. Mattel,*

1   *Inc.*, 552 U.S. 576, 582, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008).  The enforcement

2   of agreements to arbitrate "applies with special force in the field of international

3   commerce." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S.

4   614, 631, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985).

5       International commercial arbitration agreements involving a United States

6   resident are governed by Chapter 2 of the FAA, which codifies the Convention

7   on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York

8   Convention" or "Convention").   9 U.S.C. § 206.   Plaintiff is a United States

9   corporation and Defendants are citizens of Spain, a signatory to the

10  Convention. *See* "Status[:] Convention on the Recognition and Enforcement of

11  Foreign Arbitral Awards (New York, 1958)", United Nations Commission on

12  International Trade Law.[3]  Agreements governed by the New York Convention

13  are also governed by Chapter 1 of the FAA to the extent that the FAA and the

14  Convention are not in conflict.  *See* 9 U.S.C. § 208; *see also AASI Creditor*

15  *Liquidating Trust v. AU Optronics Corp. (In re TFT-LCD (Flat Panel) Antitrust Litig.)*,

16  2013 U.S. Dist. LEXIS 102307, *62 (N.D. Cal. July 18, 2013).

17      Pursuant to Chapter 1, Section 4 of the FAA, "a party aggrieved by the

18  alleged failure, neglect, or refusal of another to arbitrate under a written

19  agreement for arbitration may petition any United States District Court . . . for an

20  order directing that . . . arbitration proceed in the manner provided for in [the

21  arbitration] agreement." 9 U.S.C. § 4.  Further, the Court must "make an order

22  directing the parties to proceed to arbitration in accordance with the terms of

23  the agreement" once it is "satisfied that the making of the agreement for

24  arbitration or the failure to comply therewith is not in issue". *Id*.  The Federal

25  Arbitration Act provides that contractual arbitration agreements "shall be valid,

26

27  [3] Available at: <http://www.uncitral.org/uncitral/en/uncitral_texts/arbitration/NYConvention_status.html> (last accessed 30 December 2015).

irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Arbitration agreements are enforced under Sections 3 and 4 of the Act, which provide "two parallel devices for enforcing an arbitration agreement." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983). Under Section 3, courts may order "a stay of litigation in any case raising a dispute referable to arbitration," while Section 4 empowers courts to enter "an affirmative order to engage in arbitration." *Id.*; 9 U.S.C. §§ 3-4.

When determining whether a party should be compelled to arbitrate claims, the court uses a two-step process. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The court must determine: (1) whether a valid agreement to arbitrate exists, and (2) whether the agreement encompasses the dispute at issue. (*See id.*) A party cannot be ordered to arbitration unless there is "an express, unequivocal agreement to that effect." *Samson v. NAMA Holdings, LLC*, 637 F.3d 915, 923 (9th Cir. 2011) (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980)). If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms. *Chiron Corp*, 207 F.3d at 1130.

The parties do not dispute that there is a valid agreement to arbitrate. (*See* Doc. No. 7 at 9 (Defendants admit "the validity and enforceability of the Settlement Agreement and the arbitration clause are not in dispute").) They also do not dispute that the subject matter of the dispute is otherwise arbitrable. (*See id.* at 6 ("the agreement encompasses the dispute at issue").) Nevada courts "resolve all doubts concerning the arbitrability of the subject matter of a dispute in favor of arbitration. *International Ass'n of Firefighters, Local #1285 v.*

1   *Las Vegas*, 104 Nev. 615, 764 P.2d 478, 480 (1988).  Therefore, Defendants should

2   be compelled to arbitrate the instant dispute.

3          Defendants claim that they have not refused to participate, but rather

4   moved to dismiss "for the plaintiff's failure to meet the conditions precedent to

5   arbitration".  (*See id*. at pp. 8-9.)  Pursuant to the rules of ADR Services, an

6   arbitration is commenced by demand, if the provider is not named in the

7   arbitration clause. (*See* **Exhibit 7**, Rule 5(a).)[4]  Plaintiff did so on August 3, 2015.

8   (*See* **Exhibit 5**; *see also* **Exhibit 6** at ¶ 6.)  Those rules then require a respondent to

9   file an answering statement within 15 calendar days after the demand is

10  confirmed.   (*See* **Exhibit 7**, Rule 5(a)(2).)   Rather than filing an answering

11  statement, Defendants filed a so-called motion to dismiss.  (*See* **Exhibit 8**.)

12  Defendants further stated that they "believed (and believe) that the arbitrator

13  should dismiss AMA's claims because AMA failed to meet the contractually

14  mandated conditions precedent to arbitration."  (*See id*. at p. 7.)  Defendants

15  argue that Plaintiff failed to comply with ¶ 3.1, thus prohibiting any arbitration or

16  litigation.  (*See* Doc. No. 7, pp. 9-11.)  Such represents a question of arbitrability.

17  "[T]he question of arbitrability is left to the court unless the parties clearly and

18  unmistakably provide otherwise".  *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir.

19  2011).  The Agreement does not explicitly state that the arbitrator is to decide

20  arbitrability.   Thus, by presenting ADR Services, Inc., with a question of

21  arbitrability, rather than the required answering statement, Defendants'

22  conduct constituted a refusal to arbitrate.

23         Moreover, as set forth above, this dispute does not involve content

24  uploaded by a third party. Defendants uploaded this content themselves. (*See*

25  Doc. No. 9, at ¶¶ 16-17, 29-30, 33-34, 64-66.)   The Agreement between the

26  ───────────────

27  [4]   Available   at:   <http://www.adrservices.org/pdf/ADR%20ARBITRATION%20RULES%20(5)%20
     update%207-14-10.pdf> (last accessed 6 January 2016.)

parties covered infringing material uploaded by users of the Serviporno website, not by Defendants themselves. (*See* **Exhibit 1**, at ¶ 3.1.)   There is no bar prohibiting arbitration.

Alternatively, Plaintiff's letter of December 23, 2014, satisfied ¶ 3.1 of the Agreement.  To the extent it may have been deficient, Defendants waived any objection when they responded to the subpoena issued pursuant to ¶ 3.3, which mandated compliance with ¶ 3.1 as a condition precedent.  *See Udevco, Inc. v. Wagner*, 100 Nev. 185, 189 (1984) ("Waiver can be implied from conduct such as . . . accepting performance which does not meet contract requirements"); *see also Baroi v. Platinum Condo. Dev., LLC*, 2012 U.S. Dist. LEXIS 95723, *8 (D. Nev. July 10, 2012).  In responding to the subpoena, Defendants engaged in "conduct so inconsistent with an intent to enforce the right as to induce a reasonable belief that the right has been relinquished." *Hudson v. Horseshoe Club Operating Co.*, 112 Nev. 446, 457 (1996).  They agreed to arbitrate. (See Doc. No. 7-1, p. 8 ("Ron, We agree to arbitrate . . . Val Gurvits").  They even admit they "invited [Plaintiff] to initiate arbitration" though they disputed the merits of the claims.  Doc. No. 7 at 19.  Thus, it is apparent that Defendants failed to comply with the arbitration agreement and they may be compelled to arbitrate under Section 4 of the FAA.

Similarly, under Section 206, the Court must determine whether:

(1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states.

*Balen v. Holland America Line Inc*., 583 F.3d 647, 654-55 (9th Cir. 2009) (citation omitted).  "If these questions are answered in the affirmative, a court is required

1  to order arbitration unless the court finds the agreement to be null and void,

2  inoperative, or incapable of being performed." *Prograph Intern. Inc. v. Barhydt*,

3  928 F. Supp. 983, 988 (N.D. Cal. 1996).  All four questions are answered in the

4  affirmative.  First, there is an agreement in writing.  (*See* **Exhibit 1**, ¶ 20.1.)  The

5  agreement provides for arbitration in the United States.  (*See id*.)  It arises out of

6  a commercial relationship, specifically an agreement regarding advertising and

7  distribution of intellectual property.  (*See id*. at ¶ 1.2.)  And Defendants are not

8  American citizens.  (*See* Doc. No. 7 at p. 13 ("the present action is brought

9  against a Spanish company and a Spanish resident").)   Therefore, it is

10  enforceable under the Convention and Section 206.

11         **2.2   ADR Services, Inc., Should be Appointed as the Arbitration Provider**

12        Pursuant to the FAA and the Convention, this Court is empowered to

13  appoint an arbitrator where the agreement is silent.  *See* 9 U.S.C. §§ 5 & 206; *see*

14  *also Gar Energy & Assocs. v. Ivanhoe Energy Inc.*, 2011 U.S. Dist. LEXIS 148424, *29

15  (E.D. Cal. Dec. 23, 2011).  Plaintiff selected ADR Services, Inc., and none of

16  Defendants' pleadings in this Court or the arbitration object to the use of that

17  service.   As it has a "stellar reputation" and provides "fundamentally fair

18  arbitrations", this Court may order the parties to arbitrate through Plaintiff's

19  chosen provider, according to its rules.  *Gar Energy,* 2011 U.S. Dist. LEXIS 148424

20  at * 30; *see also Ferrini v. Cambece*, 2013 U.S. Dist. LEXIS 77976, *6-7 (E.D. Cal.

21  June 3, 2013) (ordering arbitration pursuant to § 5 through the movant's chosen

22  provider in the absence of an explicitly agreed upon provider).  ADR Services

23  has offices in Clark County, Nevada, which is within this district, and thus

24  permissible under § 206.[5]  *See Bauhini Corp. v. China Natl. Mach. & Equip. Import*

25  *& Export Corp.*, 819 F.2d 247, 250 (9th Cir. 1987).

26

27  [5] Selection of an arbitration service provider can constitute the selection of an arbitrator. *See Carideo v. Dell, Inc.*, 2009 U.S. Dist. LEXIS 104600, *16 (W.D. Wash. Oct. 26, 2009).

RANDAZZA | LEGAL GROUP

### 2.3    This Matter Should Be Stayed Pending Arbitration

While this matter is arbitrated, the instant proceedings should be stayed pursuant to 9 U.S.C. § 3; accord *Morris v. Morgan Stanley & Co.*, 942 F.2d 648, 653 (9th Cir. 1991). Although the Court may dismiss the matter once there is a referral to arbitration, such is discretionary. *See Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988).[6] A stay is proper, given Defendants' failure to properly arbitrate previously and their efforts to take actions to divest courts of jurisdiction. Undoubtedly, Plaintiff will need to seek confirmation of the award, and the retention of jurisdiction suits those purposes.

### 3.0    Conclusion

The parties agree this matter is arbitrable. Plaintiff has met all conditions precedent for initiating the arbitration. Defendants failed to properly arbitrate the matter, instead presenting a vacuous motion to dismiss in the arbitration. Thus, the agreement to arbitrate should be enforced, with arbitration to proceed under the auspices of ADR Services, while this matter is stayed in the interim.

Dated this 6th day of January, 2016.

Respectfully Submitted,

/s/ Marc J. Randazza
Marc J. Randazza, Esq.
Nevada Bar No. 12265
Ronald D. Green, Esq.
Nevada Bar No. 7360
RANDAZZA LEGAL GROUP, PLLC
3625 S Town Center Dr., Ste. 150
Las Vegas, NV 89135
Tel: (702) 420-2001
Fax: (702) 420-2003
ecf@randazza.com

---

[6] Plaintiff recognizes the Ninth Circuit precedent that a stay is discretionary, but otherwise refers this Court to the recent Second Circuit decision discussing the mandatory nature of the stay. *See Katz v. Cellco P'ship*, 794 F.3d 341 (2d Cir. 2015).

Case No. 2:15-cv-01673-JCM-GWF

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 6th, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing document being served via transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully Submitted,

Employee,
Randazza Legal Group, PLLC