# **EXHIBIT 5**

Demand for Arbitration and
Arbitration Complaint



| | DEMAND FOR ARBITRATION |
|---|---|
| | *before ADR Services, Inc.* |

**(CLAIMANT):** AMA MULTIMEDIA, LLC

| Representative/Attorney (if known) | Representative/Attorney (if known) |
|---|---|
| Name: Ronald D. Green<br>Law Firm: Randazza Legal Group<br>Address: 3625 S. Town Center Drive<br>Las Vegas, NV 89135<br><br>Telephone: (702) 420-2001<br>Facsimile: (305) 437-7662<br>Email: ecf@randazza.com | Name:<br>Law Firm:<br>Address:<br><br><br>Telephone:<br>Facsimile:<br>Email: |

**(RESPONDENT):** BORJAN SOLUTIONS, S.L., et al.

| Representative/Attorney (if known) | Representative/Attorney (if known) |
|---|---|
| Name: Val Gurvits<br>Law Firm: Boston Law Group, P.C.<br>Address: 825 Beacon Street, Suite 20<br>Newton Centre, MA 02459<br><br>Telephone: (617) 928-1804<br>Facsimile: (617) 928-1802<br>Email: vgurvits@bostonlawgroup.com | Name:<br>Law Firm:<br>Address:<br><br><br>Telephone:<br>Facsimile:<br>Email: |

**NATURE OF DISPUTE:** Claimant hereby demands that you submit the following dispute to arbitration.

<See attached complaint>

*(attach additional pages if necessary)*

**ARBITRATION AGREEMENT:** This demand is made pursuant to the arbitration agreement you made on the instrument described as:

<See attached complaint>

*(please attach a copy of the arbitration agreement)*

**MEDIATION:** If mediation in advance of the arbitration is desired, or required, please check here and ADR Services, Inc. will assist the parties in coordinating a mediation proceeding first: ☐

**CLAIM OR RELIEF SOUGHT** (describe):

<See attached complaint>

*(attach additional pages if necessary)*

| Claimant's Name: AMA MULTIMEDIA, LLC | ***Demand for Arbitration before*** |
|---|---|
| Respondent's Name: BORJAN SOLUTIONS, S.L., et al. | ***ADR Services, Inc.*** |

**OTHER RELIEF SOUGHT:**

☐ Attorney Fees
☐ Arbitration Fees
☐ Other:
<See attached complaint>

☐ Interest
☐ Punitive / Exemplary

**RESPONSE:** You may file a response and counter-claim to the claim stated in the previous page. Send the original of the response and counter-claim to the Claimant at the address stated above, with copies to ADR Services, Inc. office checked below:

**CLAIMANT'S SIGNATURE** (may be signed by an attorney):

Signature

Ronald D. Green, Esq.

Print Name

3 AUG 2015

Date

Attorney for AMA Multimedia, LLC

Title (if Claimant is a company)

## DIRECTIONS FOR SUBMITTING DEMAND FOR ARBITRATION

1. Please serve a copy of the Demand for Arbitration, pre-dispute Arbitration Agreement, and any additional claim documents to the opposing counsel (if the opposing side is not or not yet represented by counsel, please submit the aforementioned documents to the opposing party).

2. Please include a check payable to ADR Services, Inc. for the required, **non-refundable $300 Initial Filing Fee** and submit to the appropriate ADR Services, Inc. office along with your Demand for Arbitration.

3. Please submit a copy of the Demand for Arbitration, pre-dispute Arbitration Agreement, and any additional claim documents to the appropriate ADR Services, Inc. office:

☐ **Century City / West Los Angeles**
1900 Avenue of the Stars, Suite 250
Los Angeles, California 90067
Tel: (310) 201-0010 / Fax: (310) 201-0016

☑ **Downtown Los Angeles**
915 Wilshire Boulevard, Suite 1900
Los Angeles, California 90017
Tel: (213) 683-1600 / Fax: (213) 683-9797

☐ **San Francisco / Northern California**
100 First Street, 27th Floor
San Francisco, California 94105
Tel: (415) 772-0900 / Fax: (415) 772-0960

☐ **San Diego**
225 Broadway, Suite 1400
San Diego, California 92101
Tel. (619) 233-1323 / Fax: (619) 233-1324

☐ **Orange County**
19000 MacArthur Boulevard, Suite 550
Irvine, California 92612
Tel: (949) 863-9800 / Fax: (949) 863-9888

☐ **Silicon Valley**
100 First Street, 27th Floor
San Francisco, California 94105
Tel: (415) 772-0900 / Fax: (415) 772-0960

4. If you have any questions regarding the Demand for Arbitration or procedures regarding the Binding Arbitration, please feel free to visit our website at **www.adrservices.org** or contact the filing office above and ask for the "Arbitration Coordinator".

RANDAZZA LEGAL GROUP
Marc J. Randazza, Esq.
Ronald D. Green, Esq.
3625 S. Town Center Drive, Suite 150
Las Vegas, NV 89135
Telephone: 702-420-2001
Facsimile: 305-437-7662
ecf@randazza.com

**BEFORE A.D.R. SERVICES, INC.**
**CLARK COUNTY, NEVADA**

| | |
|---|---|
| AMA MULTIMEDIA, LLC, a Nevada limited liability company, | Case No.: |
| Complainant, | |
| v. | |
| BORJAN SOLUTIONS, S.L. d/b/a SERVIPORNO, a Spanish company; and BORJAN MERA URRESARAZU, an individual, | |
| Respondents. | |

**ARBITRATION COMPLAINT**

Complainant AMA Multimedia, LLC, through its counsel Randazza Legal Group, brings this Arbitration Complaint against Respondents Borjan Solutions, S.L. d/b/a Serviporno and Borja Mera Urrestarazu as follows:

/ / /

/ / /

/ / /

/ / /

**THE PARTIES**

1.      Complainant AMA Multimedia, LLC ("AMA")[1] is a Nevada limited liability company with its principal place of business in Las Vegas, Nevada. AMA produces adult audiovisual material, which it distributes via the World Wide Web under such well-known brands as "Passion-HD" and "Porn Pros," among others.

2.      Respondent Borjan Solutions, S.L. d/b/a Serviporno ("Serviporno") is a Spanish company, operating within the Principality of Asturias. Serviporno owns and operates the website located at <serviporno.com>, as well as the other websites referenced in this Complaint.

3.      Respondent Borjan Mera Urresarazu ("Borjan") is the principal of Serviporno and is responsible for the operations of the website located at <serviporno.com>, as well as the other websites referenced in this Complaint.

**JURISDICTION**

4.      This matter is properly before this arbitration service. On or about August 26, 2013, the parties to this dispute executed a Settlement Agreement and Mutual Release (the "Agreement").

5.      The Agreement provided that the parties would first informally negotiate any disputes relating or arising out of the Agreement. If informal negotiations were unsuccessful, the parties would engage in mediation of the dispute. If mediation was unsuccessful, the parties would engage in

---

[1] Some of the facts alleged in this Arbitration Complaint were taken by AMA's predecessor-in-interest, SSC Group, LLC.

RANDAZZA | LEGAL GROUP

arbitration in Clark County, Nevada. The Agreement was silent regarding the arbitration body to be selected by the aggrieved party. (*See* Settlement Agreement and Mutual Release, at ¶ 20.0, attached hereto as Exhibit 1.)

6.      The parties engaged in informal negotiations on January 23, 2015 at the offices of AMA's counsel. A representative of and counsel for AMA appeared in person on AMA's behalf. Counsel for Borjan and Serviporno appeared on Respondents' behalf while Borjan appeared telephonically on behalf of himself and Serviporno. The parties could not resolve their differences.

7.      The parties engaged in mediation on May 21, 2015 at the offices of AMA's counsel. A representative of and counsel for AMA appeared in person on AMA's behalf. Counsel for Borjan and Serviporno appeared on Respondents' behalf while Borjan appeared via videoconference on behalf of himself and Serviporno. Las Vegas attorney Clyde DeWitt served as mediator. The parties were unable to resolve the dispute.

8.      Given that informal negotiations and mediation were not successful, AMA now seeks to arbitrate the claims it possesses against Respondents pursuant to the terms of the Agreement.

/ / /

/ / /

/ / /

/ / /

**FACTUAL ALLEGATIONS**

**The Parties' Initial Dispute**

9.      In mid-2013, AMA learned that Respondents were engaged in large-scale copyright infringement of Complainant's works and the works of other adult entertainment content producers on the website located at <serviporno.com>.

10.      On an Internet forum for adult industry webmasters, located at <gfy.com>, Borjan started a thread to advertise his services. (*See* GFY.com thread entitled "Cumlouder: a new crazy company in the adult industry," dated December 3, 2012 and attached hereto as Exhibit 2.)

11.      One GFY user confronted Borjan regarding the rampant copyright infringement on Serviporno, stating that the site had "tons of full videos from all major major content [sic] producers of the world" and asked Borjan why he was posting videos from "content producers who didn't give [him] permission to broadcast their scenes in full." (*See id.*)

12.      Another GFY user noted that Serviporno contained "full length videos from the biggest programs, their own watermarks over the copyright owner's watermark," while another user emphatically stated that most of the content on Serviporno was stolen from other content producers. (*See id.*)

13.      Borjan admitted that he was unlawfully taking videos from other tube sites and uploading them to Serviporno. (*See id.*) Borjan implied that he

knew his actions were unlawful but that he did not think he was doing any damage to the copyright owners whose works he was infringing. (*See id.*)

14.     Following Borjan's admission, a GFY user wrote that if he does not "have a license for the content, own the content or have user uploaded content covered by a takedown policy then [he] shouldn't have it [on Serviporno]." Shortly thereafter, Borjan responded "we know it, is the way we choose to open," causing another content producer to question "How do you know you don't make any damage to our company by showing our full scenes with your logo on it?" (*See id.*)

15.     As more and more GFY forum users complained that Borjan and Serviporno were stealing content from them and replacing their watermarks with Respondents' watermarks, Borjan abandoned the thread that he started to promote his business.

16.     Borjan's and Serviporno's content theft was particularly offensive to Complainant AMA (and to the content producers participating in the GFY thread Borjan started to promote his business) because Respondents were brazenly stealing and posting content, admitting to it online, and insisting that its actions were not harming content producers and were an acceptable business practice.

**The Initial Settlement**

17.     After AMA learned of Respondents' infringement and investigated the Serviporno website, it began making plans to file suit against

Serviporno in the U.S. District Court for the Northern District of Texas, the location of Respondents' servers at the time. Currently, Respondents' servers are located in Los Angeles, California.

18.     Before filing the litigation, AMA attempted to engage in settlement discussions with Respondent.

19.     These discussions were productive, leading AMA to believe that Respondents were willing to resolve the issues between the parties without the necessity of litigation.

20.     The parties agreed upon a settlement, but Borjan and Serviporno insisted that all of the content on Serviporno was uploaded by users and refused to admit otherwise. While AMA knew this to be false, its main concern was getting its copyrighted content off of the Serviporno website, so it entered into the Agreement with Respondents.

21.     In August 2013, the parties executed the Agreement, which was designed to ensure that Respondents would stop stealing and posting AMA's content on the Serviporno website. (*See* Exhibit 1.) It additionally required Respondents to take down all content that infringed upon AMA's copyrights and to enforce its repeat infringer policy. (*See id.*)

22.     For about one year after the parties executed the Agreement, they enjoyed a cordial relationship. Complainant provided Respondent with approved, short videos meticulously curated for promotional purposes that are approximately 8-10 minutes in length with adequate watermarks and

branding. Respondents posted them along with links and banners to Complainant's membership-based pay sites where Internet users could purchase subscriptions to watch Complainant's full-length videos. Respondents would be paid a commission on any sales they generated for AMA.

### Respondents Resume Infringement

23.     Approximately one year after the execution of the Agreement, Respondents stopped posting AMA's approved and legal videos. Instead, their old, infringing activities resumed in earnest, with AMA's full length videos appearing on the Serviporno website with AMA's branding removed.

24.     On November 24, 2014, AMA's principal confronted Borjan and Serviporno about their theft and was provided insufficient excuses by Borjan for the infringement. Borjan's excuses proved to be particularly deficient when he subsequently admitted that he reviews and manually approves every video before it is posted on Serviporno. No video is ever posted on the site without Respondents' explicit approval.

25.     AMA tested Respondents' upload tool, a mechanism that allows a website visitor to upload content to the website's server for viewing on the website, on December 2, 2014. AMA attempted to upload videos on four separate occasions, and none was ever published on <serviporno.com>.

26.     The videos that AMA attempted to upload were never published to the site because Respondents' upload tool is a façade designed to cover up Respondents' own posting of infringing videos to the website.

27.     Most tube sites have an active user community uploading videos to the sites. However, Respondents' Serviporno site has no apparent user community. The videos on the site do not even identify which user uploaded each video – a standard feature on tube sites from ones that feature adult entertainment to YouTube and Vine.

28.     As further evidence that users are not uploading videos on the site, the Serviporno website does not feature a community page or user profiles like other tube sites.

29.     Most tube sites prominently feature their "sign in" or "registration" links on the front page of the website in order to encourage website visitors to join and begin uploading videos to the site. Serviporno's "sign in" and "registration" links are obscured as small links at the bottom of the site's front page next to the site's terms and conditions and privacy policy. In other words, Respondents have placed those links on an area of the page where website visitors are least likely to see them.

30.     Complainant AMA also discovered that many of the videos on the Serviporno site exceeded the 100MB size limit of uploads permitted on the Serviporno site, demonstrating that it was impossible that third party users

of Serviporno uploaded the videos. The uploads must have been done by Respondents themselves.

31.    On January 6, 2015, AMA sent a cease and desist letter to Respondents, which indicated that many of the videos on the Serviporno website exceed the maximum upload size Respondents permitted.

32.    In response, on January 8, 2015, Respondents increased the file size upload limit to 1,000MB. However, Respondents still maintained that third party users uploaded the videos in spite of massive evidence to the contrary.

33.    Respondents asserted that the upload limit was different depending upon where the Internet user was accessing the Serviporno site. For example, while the upload size limit for the United States might be 100MB, the upload limit for another country may be greater or smaller.

34.    Complainant did not find Respondents' assertion to be truthful.

35.    Indeed, Respondents' assertion regarding geographically determined upload limits was a lie. Complainant tested Respondents' argument and used a proxy service to test the upload page from Spain, Germany, France, and England to see if file size limits actually varied by location. They did not.

**Respondents' Related Websites**

36.    Complainant AMA recently discovered that Respondents' infringements of the copyrighted works of AMA and others extends far beyond the Serviporno website.

37.   Respondents actually operate a network of geographically targeted websites. Infringing and rebranded content appears on all of them.

38.   Complainant cannot be sure whether it has discovered every website Respondents use to further their copyright infringement. Currently, Complainant is aware of three "rings" of websites that Respondents use to infringe upon and profit from the copyrights of others.

39.   Regarding the first ring, Serviporno is part of a ring of websites that include the following:

a.   <serviporno.com>, which targets the Spanish market;

b.   <todayporn.com>, which targets the American market;

c.   <voglioporno.com>, which targets the Italian market;

d.   <pornodingue.com>, which targets the French market;

e.   <einfachporno.com>, which targets the German market;

f.   <pornodoido.com>, which targets the Brazilian market;

g.   <pornozot.com>, which targets the Dutch market;

h.   <pornoglu.com>, which targets the Turkish market;

i.   <chikiporno.com>, which targets the Russian market; and

j.   <seansporno.com>, which targets the Polish market.

Screenshots for each website within this first ring are attached hereto as Exhibits 3.1 through 3.10.

40.     Once a video is posted on one of these sites, it will appear on every other website within the ring with translation into the language of the target market.

41.     Each of these websites has the same design and style and was, at one time, all linked to each of the other websites within the ring. Currently, they are still linked together with the exception of <todayporn.com>. Respondents removed the link to <todayporn.com> immediately after the mediation, presumably to attempt to defeat U.S. jurisdiction should a lawsuit ever arise.

42.     Respondents' second ring of websites includes the following:

a.  <pornburst.xxx>, which targets the American market;

b.  <bundesporno.xxx>, which targets the German market;

c.  <pornalia.xxx>, which targets the Italian market; and

d.  <gauleporno.xxx>, which targets the French market.

Screenshots for each website in this second ring are attached hereto as Exhibits 4.1 through 4.4.

43.     The second ring of websites shares the same design and style and operates identically to the first ring of websites.

44.     Respondents' third ring of websites includes the following:

a.  <freemovies.tv>, which targets the American market;

b.  <canalporno.com>, which targets the Spanish market;

c.  <prendiporno.tv>, which targets the Italian market;

    d.   <pornodrome.tv>, which targets the French market;

    e.   <nedporno.com>, which targets the Dutch market;

    f.   <guterporn.com>, which targets the German market;

    g.   <sexoquente.tv>, which targets the Brazilian market;

    h.   <filmikiporno.tv>, which targets the Polish market;

    i.   <megaporno.tv>, which targets the Russian market; and

    j.   <pornovideolar.tv>, which targets the Turkish market.

Screenshots for each website in this third ring are attached hereto as Exhibits 5.1 through 5.10.

45.    The third ring of websites shares the same design and style and operates identically to the first and second rings of websites.

46.    The three rings of websites do not operate independently of each other. Respondents often place the same infringing videos on each and every website in all three rings but will typically have three distinct titles – one for each ring of sites.

47.    It would be an understatement to say that it strains credibility to argue that an Internet user would upload a video to all three rings of websites with a distinctly different title for each ring and a translation of each title for each website within each ring.

48.    Respondents are uploading videos to all three rings themselves and translating the video title for each website within each ring.

49.   On June 8, 2015, Complainant AMA discovered that Respondents had reviewed the entire Serviporno website and attempted to remove each video owned by AMA from the site. Because all AMA branding had been removed from the videos, it would have been difficult – if not impossible – for any person but the uploader himself to recognize the content as AMA's. Respondents were clearly trying to destroy or conceal as much evidence as possible in the middle of a legal dispute, as it happened days after the parties engaged in unsuccessful mediation and before the parties' legal issues were resolved.

50.   Respondents' removal of AMA's content is further evidence of their guilt. An innocent party would not remove content and destroy all evidence if that party was not liable under the Digital Millennium Copyright Act (the "DMCA") because third parties had uploaded the videos.

51.   The videos removed from Serviporno were removed from each and every Respondent website, regardless of which ring they were associated with. The videos Respondents failed to remove remained active on all of three rings. Thus, the video files are not associated with different users for each ring of sites but are connected in Respondents' backend, further demonstrating that Respondents are uploading the videos themselves.

52.   Defendants' sites contain a directory of "Pornstar" pages to allow users to find infringing videos featuring their favorite adult stars. Each

pornstar page has a manually cropped image of the star along with a biography. Website users would have no mechanism for altering these images, the biography text, or the pornstar page itself.

53.    Respondents have three infringed images on three unique pornstar pages across their Websites. The AMA images that were stolen and uploaded by Respondents for their "Pornstar" biography pages were taken from video productions that occurred in 2014, at least 6 months from the execution of the Agreement.

54.    Respondents were not able to locate or remove all of Complainant's videos from the sites. Currently, AMA is aware that sixteen (16) of its videos are still contained on Respondents' sites. AMA is additionally aware that three (3) of its images are located on Respondents' sites.

55.    This number is far less than the amount of videos previously on Respondents' sites.

56.    Each and every time Respondents think that AMA has discovered a different part of Respondents' illegal scheme, Respondents alter the websites in an attempt to frustrate Complainant's claims.

**CLAIMS FOR RELIEF**

**First Claim for Relief – Copyright Infringement (17 U.S.C. § 501)**

57.    Complainant repeats and realleges each and every preceding paragraph as if set forth fully herein.

58.     AMA is the owner of at least nineteen (19) timely registered works that are or were copied and/or distributed, without authorization, on one or more of the websites controlled and operated by Respondents.

59.     The number of infringements on Respondents' websites grows daily.

60.     Respondents reproduced, reformatted, and distributed AMA's copyrighted works through servers and other hardware that they owned, operated, or controlled.

61.     Respondents infringed AMA's copyrights through their reproduction and distribution of Complainant's works through the websites referenced herein without AMA's approval or authorization.

62.     Respondents knew or should have known that they did not have authorization to exploit AMA's copyrighted works and that their actions constituted copyright infringement.

63.     Respondents engaged in intentional, knowing, negligent, or willfully blind conduct that demonstrates they engaged actively in the unlawful collection and distribution of AMA's copyrighted works.

64.     The copyrighted files on Respondents' websites increased the appeal of those sites, increasing Respondents' revenue.

65.     Respondents actively encourage the users of the websites to upload infringing material.

66.     Respondents upload infringing material to the websites themselves.

67.     On information and belief, Respondents uploaded some or all of the infringing videos onto the websites themselves.

68.     Respondents' conduct was willful within the meaning of 17 U.S.C. § 101 *et seq.*   At minimum, Respondents acted with willful blindness and reckless disregard of AMA's registered copyrights.

69.     Respondents are liable to Complainant for copyright infringement.

70.     Under 17 U.S.C. § 504, AMA may recover damages, including readily ascertainable direct losses and all profits Respondents made by their wrongful conduct; alternatively, the law permits AMA to recover statutory damages. *Id*. § 504(c).

71.     Since infringement was willful, AMA is entitled to enhanced statutory damages of $150,000 per instance of infringement. *Id*. § 504(c)(2).

**Second Claim for Relief – Contributory Copyright Infringement**

72.     Complainant repeats and realleges each and every preceding paragraph as if set forth fully herein.

73.     Respondents had actual or constructive knowledge regarding the infringement occurring on their websites or were willfully blind to the infringements.

74.     Respondents' infringement was committed by third-party users of Respondents' websites, who distributed AMA's works without permission.

75.     Respondents induced, caused, or materially contributed to this third party infringement by providing the websites, and specifically through certain features the websites designed to encourage users to upload copyright protected videos.

76.     Respondents assisted these third parties in organizing these infringing works on its website.

77.     Respondents received a direct financial benefit from the third party copyright infringement and are liable to Complainant.

**Third Claim for Relief – Vicarious Copyright Infringement**

78.     Complainant repeats and realleges each and every preceding paragraph as if set forth fully herein.

79.     Respondents had specific (or at least general) knowledge of copyright infringement occurring on their websites.

80.     Respondents had the right and ability to control access to, remove, or disable the infringing materials.

81.     Respondents profited from the infringement.

82.     Respondents declined their right to delete or disable infringing content and are liable to Complainant.

/ / /

/ / /

### Fourth Claim for Relief – Inducement of Copyright Infringement

83.     Complainant repeats and realleges each and every preceding paragraph as if set forth fully herein.

84.     Respondents designed and distributed technology and induced individuals to use this technology to promote the copyrighted material on Respondents' websites, including material belonging to Complainant.

85.     As a direct and proximate result of Respondents' inducement, users of Respondents' websites infringed Complainant AMA's works through Respondents' websites.

86.     Respondents' inducement was willful, knowing, willfully blind, or negligent. At all pertinent times, Respondents acted with disregard for and indifference to AMA's copyrights.

### Fifth Cause of Action – Violation of 17 U.S.C. § 1202(b)

87.     Complainant repeats and realleges each and every preceding paragraph as if set forth fully herein.

88.     Respondents affixed the logos of their websites to every infringing work on the Respondents' website.

89.     Respondents attached their logos to the infringing works without AMA's knowledge or permission.

90.     Respondents' use of their logos constitutes "false copyright management information," as it falsely informs the public that Respondents

are the owners, rights owners, and licensees of the infringing videos and that they have the right to show them.

91.     Respondents knowingly added this copyright management information to the infringing works with the intent to induce, enable, facilitate, and conceal infringement.

**Sixth Cause of Action – Breach of Contract**

92.     Complainant repeats and realleges the allegations of the preceding paragraphs as if set forth fully herein.

93.     On or about August 19, 2013, Complainant and Respondents entered into the Agreement to resolve their dispute regarding the presence of Complainant's copyrighted content on Respondent's Serviporno webpage.

94.     In that Agreement, Respondents agreed to remove all infringing AMA material upon notification by AMA and to provide AMA with all information in their possession about the uploader, including links to all of the uploader's uploads. (*See* Exhibit 1, at ¶ 3.1.)

95.     Respondents additionally agreed to comply with any subpoena sent to them by Complainant pursuant to the DMCA and to not challenge any subpoena from Complainant for lack of jurisdiction. (*See id.*, at ¶ 3.3.)

96.     The Agreement is valid and binding.

97.     Complainant has performed in full all of its obligations, covenants, and conditions contained in the Agreement, except for those

obligations, covenants, and conditions from which it has been lawfully excused from performing.

98.    On January 26, 2015, Complainant issued a valid subpoena to Respondents regarding infringement upon the Serviporno website. On March 11, 2015, Respondents violated the Agreement by objecting to the subpoena with regard to personal jurisdiction and not providing all information in their possession regarding who was uploading the infringing videos onto Serviporno.

99.    Respondents additionally breach the Agreement on a regular and continuing basis by either uploading infringing videos themselves or turning a blind eye to website users who upload infringing videos.

100.   As a direct and proximate result of Respondents' breaches of contract, Complainant AMA has been damaged in an amount to be determined at arbitration.

101.   Complainant AMA has been forced to retain legal counsel to pursue its rights and seeks recovery of its attorneys' fees and costs.

**PRAYER FOR RELIEF**

AMA respectfully requests that the Arbitrator hereby:

A.    Enter a judgment that Respondents willfully infringed upon AMA's rights in federally registered copyrights pursuant to 17 U.S.C. § 501 through direct, contributory, vicarious, and/or inducing acts;

B.      Issue injunctive relief against Respondents, their agents, representatives, employees, attorneys, successors, and assigns, and all others acting with or on behalf of Respondents and enjoin Respondents from copying, posting, or making any other infringing use of AMA's audiovisual works pursuant to 17 U.S.C. § 502;

C.      Issue injunctive relief against Respondents, their agents, representatives, employees, attorneys, successors, and assigns, and all others acting with or on behalf of Respondents and enjoin Respondents from engaging in further copyright infringement; and if they are unable or unwilling to comply, to issue an order shutting down each and every website owned or controlled by Respondents, including but not limited to the ones listed in this Arbitration Complaint;

D.      Enter an order enjoining Respondents from disposition of any property, including their domain names, until full and final settlement or payment of any and all money damage judgments;

E.      Enter an order requiring a full and complete accounting of all amounts due and owed to AMA as a result of Respondents' illegal or improper activity, whether criminal or civil in nature;

F.      Enter an order directing Respondents to pay AMA statutory damages of maximum enhanced statutory damages of $150,000 per infringed work pursuant to 17 U.S.C. § 504(c)(2), for Respondents' willful infringement of AMA's copyrights;

G.   Enter an order directing Respondents to pay AMA statutory damages of $25,000 per instance of placing false copyright management information on the infringing works pursuant to 17 U.S.C. § 1203(c)(3)(A);

H.   Enter an order directing Respondents to pay AMA both the costs of the action and reasonable attorneys' fees incurred in prosecuting the action pursuant to 17 U.S.C. § 505;

I.   Enter an order directing Respondents to pay pre- and post-judgment interest at the highest legal rate; and

J.   Grant AMA all further relief in law and equity that the Arbitrator deems appropriate.

Dated this 3 day of August, 2015.

Respectfully Submitted,

Marc J. Randazza, Esq.
Ronald D. Green, Esq.
RANDAZZA LEGAL GROUP
3625 South Town Center Drive, Suite 150
Las Vegas, NV 89135
Tel: (702) 420-2001
Fax: (702) 420-2003
ecf@randazza.com

RANDAZZA | LEGAL GROUP