RANDAZZA LEGAL GROUP, PLLC
Marc J. Randazza (NV Bar No. 12265)
Ronald D. Green (NV Bar No. 7360)
4035 S. El Capitan Way
Las Vegas, NV 89147
Telephone: 702-420-2001
Facsimile: 305-437-7662
ecf@randazza.com

*Attorneys for Plaintiff,*
*AMA Multimedia, LLC*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| AMA MULTIMEDIA, LLC, a Nevada limited liability company,<br><br>   Plaintiff,<br><br>v.<br><br>BORJAN SOLUTIONS, S.L. d/b/a SERVIPORNO, a Spanish company; and BORJAN MERA URRESTARAZU, an individual,<br><br>   Defendants. | Case No.: 2:15-cv-01673-JCM-GWF<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT AND FOR AN AWARD OF CONTRACTUAL COSTS AND FEES** |

  If Defendants had not intentionally frustrated Plaintiff's initial attempts to arbitrate this matter as required by contract, the instant litigation would not have been brought.  They cannot both refuse to participate in arbitration and then complain that this matter was not arbitrated.  Now that Defendants appear ready and willing to participate in arbitration, and Magistrate Judge Foley has recommended that Plaintiff's Motion to Compel Arbitration should be granted (Doc. No. 21), this matter should be stayed, and Defendants should be compelled to arbitrate, consistent with Judge Foley's Report and

Recommendation.  Defendants are otherwise properly subject to the jurisdiction of this Court.  Plaintiff hereby opposes Defendants' Motion to Dismiss Amended Complaint and for an Award of Contractual Costs and Fees (Doc. No. 13).

**1.0    Procedural Background**

As recited in the Amended Complaint, and generally repeated by Defendants, AMA Multimedia produces videos, and Defendants operate a website that distributes videos, the majority of them unlawfully.  Defendants wrongly distributed (and continue to distribute) Plaintiff's copyrighted works without authorization.  The parties reached an initial agreement in a prior dispute (the "Settlement Agreement") on August 26, 2013.  It appears that Defendants abided by that Agreement for about one year but soon recommenced unauthorized distribution of Plaintiff's works.  Defendants' renewed distribution of Plaintiff's videos resulted in the instant dispute, based both on Defendants' copyright infringement and their breach of the Settlement Agreement.

In setting forth the history of the dispute, Defendants withhold relevant documents from the Court.  They stop with the e-correspondence of June 27, 2015 and ignore subsequent events.  (*See* Doc. No. 7-1 at 19-22.)  As set forth in the Amended Complaint, on or about August 3, 2015, Plaintiff transmitted a Demand for Arbitration and an Arbitration Complaint to ADR Services, in an attempt to initiate arbitration.  (*See* Doc. No. 9 at ¶ 89.)  Defendants frustrated that attempt.  (*See id.* at ¶ 96.)  Defendants were cagily uncommunicative with AMA's chosen arbitration service and violated the arbitration rules by filing a motion to dismiss before any arbitration had formally begun.  (*See* Doc. No. 10 at 6-7; *see also* Doc. No. 10-6 at ¶¶ 4, 7-10, 14; *and see* Doc. No. 17-1 at Rule 5(A)(2).)  These actions convinced ADR Services that Defendants would not consent to arbitration with them and, on August 25, 2016, declined to take the

RANDAZZA | LEGAL GROUP

1    case.  (*See* Doc. No. 10-6 at ¶ 14; *see also* Doc. No. 10 at ¶¶ 95 & 99.)  Seeing as

2    Defendants were acting to avoid arbitration, the instant lawsuit was filed.

3    **2.0   Legal Standard**

4         To support personal jurisdiction, the plaintiff must only "'make only a *prima*

5    *facie* showing of jurisdictional facts to withstand the motion to dismiss.'"  *Doe v.*

6    *Unocal*, 248 F.3d 915, 922 (9th Cir. 2001) (quoting *Ballard v. Savage*, 65 F.3d 1495,

7    1498 (9th Cir. 1995)).   When considering the jurisdictional issue, the court

8    "resolves all disputed facts in favor of the plaintiff." *Pebble Beach Co. v. Caddy*,

9    453 F.3d 1151, 1154 (9th Cir. 2006).

10        Generally, personal jurisdiction over a defendant is proper if it is permitted

11   by a long-arm statute and does not violate federal due process. *See Fireman's*

12   *Fund Ins. Co. v. Nat. Bank of Coops.*, 103 F.3d 888, 893 (9th Cir. 1996).  Here, both

13   the Nevada long-arm statute (NRS 14.065) and Fed. R. Civ. P. 4(k)(2) apply.  Rule

14   4(k)(2) affords jurisdiction over a foreign defendant, treating the entire United

15   States as one "state" for jurisdictional purposes. *See Unocal*, 248 F.3d at 922

16   (employing Rule 4(k)(2) as a federal long-arm statute).  Due process under both

17   statutes is satisfied for a non-resident defendant if he has "minimum contacts"

18   with the forum such that the assertion of jurisdiction "does not offend traditional

19   notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S.

20   310, 315 (1945).

21        The Ninth Circuit has held that "a motion to dismiss for a failure to exhaust

22   non-judicial remedies is properly considered a 'nonenumerated' Rule 12(b)

23   motion." *Inlandboatmens Union of the Pac. v. Dutra Group*, 279 F.3d 1075, 1078

24   n.2 (9th Cir. 2002).   Recently, this Court determined that dismissal without

25   prejudice is appropriate where it granted a defense motion to compel

26   arbitration, rather than staying the matter. *Carter v. Rent-A-Center, Inc.*, 2015

27   U.S. Dist. LEXIS 106747, *6-7 (D. Nev. Aug. 13, 2015). As Plaintiff, though, is the one

so moving here, a stay is more appropriate than dismissal to ensure continuing jurisdiction. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) ("The FAA, 9 U.S.C. § 1 *et seq.*, requires federal district courts to **stay** judicial proceedings and **compel arbitration** of claims covered by a written and enforceable arbitration agreement. *Id.* § 3.")  Further, "[t]he FAA limits the district court's role to determining whether a valid arbitration agreement exists, and whether the agreement encompasses the disputes at issue." *Id.*  It is undisputed that a valid arbitration agreement exists and encompasses the present dispute.

**3.0   Analysis**

Defendants implicitly consented to personal jurisdiction in Nevada and such jurisdiction is otherwise appropriate.  If no state has personal jurisdiction, Fed.R.Civ.P. 4(k)(2) otherwise warrants jurisdiction being exercised in Nevada.  At a minimum, there is sufficient evidence and allegation to warrant jurisdictional discovery.[1]

The parties agree that there is a valid arbitration agreement.  However, Defendants appear to have waived their right to arbitrate.  Thus, the matter may proceed to a trial on the merits.  Notwithstanding the waiver, Plaintiff would prefer to arbitrate the matter.  As the agreement is valid and enforceable, the litigation should be stayed and arbitration compelled, as provided for in the Magistrate's Report and Recommendation.  Consistent with that Report, the Honorable Philip Pro should be the arbitrator.

/ /

---

[1]  Plaintiff addresses jurisdiction first because "[g]enerally, a district court should resolve jurisdictional issues before moving to the merits of any case." *Ltd. Brands, Inc. v. F.C. (Flying Cargo) Int'l Transp. Ltd.*, 2006 U.S. Dist. LEXIS 17029, *9 (S.D. Ohio Mar. 27, 2006).  However, the Court need not reach this question because Defendants consent to having the matter referred to arbitration. (*See* Doc. No. 14 at 2.)

### 3.1    Defendants are Subject to Jurisdiction in the State of Nevada

Defendants are subject to the jurisdiction of this Court pursuant to Nevada's long-arm statute, N.R.S. 14.065.  "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 134 S. Ct. 746, 753, 187 L. Ed. 2d 624 (2014).  Personal jurisdiction over a nonresident is only proper if it is "permitted by a state's long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 741 (9th Cir. 2013).  As recently set forth by this Court:

> Nevada's long-arm statute provides for personal jurisdiction on any basis that is consistent with the Federal Constitution. N.R.S. 14.065. Specifically, personal jurisdiction is proper when (1) the defendant has purposefully availed itself "of the privilege of acting in the forum state," (2) the claim arises "from consequences in the forum state of the defendant's activities," and (3) those activities had "a substantial enough connection within the forum state to make the exercise of jurisdiction over the defendant reasonable." *Consipio Holding, BV v. Carlberg*, 282 P.3d 751, 755 (Nev. 2012) (quoting *Jarstad v. Nat'l Farmers Union*, 92 Nev. 380, 552 P.2d 49, 53 (Nev. 1976)).

*Strack v. Morris*, 2015 U.S. Dist. LEXIS 102553, *5 (D. Nev. Aug. 5, 2015).  Nevada's test mirrors the three-part test used by the Ninth Circuit to determine whether the requisite minimum contacts exist:

> (1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum; (2) the claim arises out of or results from the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable.

*Caddy*, 453 F.3d 1151, 1155 (*quoting Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000)).  The burden is on the plaintiff to establish the first two prongs. *See Bancroft*, 223 F.3d at 1089.  If it does so, the burden shits to the defendant to show that exercise of jurisdiction is unreasonable. *See id.*  In the instant case, an application of these 3 factors clearly indicates that this

1    Court has specific jurisdiction over Defendants with regard to Plaintiff's current

2    claims against them.

### 3.1.1  Purposeful Availment and/or Purposeful Direction

4        In order to satisfy the first prong of the minimum contacts test, AMA must

5    demonstrate that Defendants have either "(1) 'purposefully availed'

6    [themselves] of the privilege of conducting activities in the forum, or (2)

7    'purposefully directed' [their] activities toward the forum."  *Caddy*, 453 F.3d at

8    1156 (*citing Schwarzenegger v. Fred Martin Motor Car Co.*, 374 F.3d 797, 800 (9th

9    Cir. 2004)).   In this instance, the "purposeful availment" requirement subjects

10   Defendants to specific jurisdiction in the State of Nevada.   The "purposeful

11   direction" requirement, as will be discussed below, subjects Defendant to

12   jurisdiction pursuant to Rule 4(k)(2).   Plaintiff must only show one, Nevada long

13   arm, or Rule 4(k)(2), for jurisdiction to attach.   However, either may properly be

14   found here.

15       To satisfy the "purposeful availment" requirement, the defendant must

16   have "performed some type of affirmative conduct which allows or promotes

17   the transaction of business within the forum state."  *Boschetto v. Hansing*, 539

18   F.3d 1011 (9th Cir. 2008).  The formation of a contract alone with a resident of

19   the forum is typically not enough to subject the non-resident defendant to

20   jurisdiction in the forum; there must be something more, such as ongoing

21   business activities in the forum. *See id*.

22       In this case, there is "something more."  In fact, there is "much more."  In

23   the Settlement Agreement, Defendants specifically agreed that both formal

24   mediation and arbitration are to be conducted in Clark County, Nevada. (*See*

25   Doc. No. 9-2 at 8, ¶ 20.1.)   Although the Agreement disclaims "consent to

26   personal jurisdiction" (*id*. at ¶ 20.0), courts have held that agreements to

27   arbitrate specifying a jurisdiction may constitute implicit consent to jurisdiction in

RANDAZZA | LEGAL GROUP

that forum.  *See Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee*, 456 U.S. 694, 704 (U.S. 1982); *Painewebber Inc. v. Chase Manhattan Private Bank (Switz.)*, 260 F.3d 453, 461 (5th Cir. 2001).  In fact, this Court has observed that an arbitration forum selection clause may constitute consent to personal jurisdiction in a suit arising directly from the agreement to arbitrate itself.  *See Pfister v. Selling Source, LLC*, 931 F. Supp. 2d 1109, 1116 (D. Nev. 2013); *see also Fireman's Fund Insurance Company v. National Bank of Cooperatives*, 103 F.3d 888 (9th Cir. 1996) (considering arbitration forum selection clause as potential implicit consent).  This is a suit arising from, in part, the contract containing the agreement to arbitrate, and Defendants' agreement constitutes "something more," if not outright consent.

### 3.1.2  Defendants' Forum Related Activities

Defendants' contacts with Nevada are a "but for" cause of AMA's claims. *See Ziegler v. Indian River Cty.*, 64 F.3d 470, 474 (9th Cir. 1995), and thus AMA's suit arises from their forum-related activities.  Defendant Urrestarazu travels to Las Vegas to meet with industry members.  (*See* Doc. No. 9-1 at 6.)   And the settlement agreement specifies Nevada as the arbitration forum, made with a Nevada company, regarding content distributed from Nevada.

### 3.1.3  This Court's exercise of jurisdiction over Defendants is reasonable

Defendants only make a conclusory statement that exercise of jurisdiction is not reasonable.  (*See* Doc. No. 13 at 16.)  They make the circular argument that since there is no jurisdiction, it is unreasonable, and thus there should be no jurisdiction.   Notwithstanding this, in determining whether jurisdiction is reasonable, Courts in this Circuit consider the seven factors enumerated in *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).  They are:

(1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the

forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Id.*  Here, in choosing Nevada as the site of mediation and arbitration, making their website available to Nevadans, and distributing (lawfully and unlawfully) the works of a Nevadan Plaintiff, Defendants have purposefully injected themselves into the State of Nevada.  They have demonstrated through their consent to the arbitration clause, and even their motion to dismiss filed in the arbitration, that there is no significant burden  created by defending themselves in Nevada.  Compare *Fireman's Fund Insurance Company v. National Bank of Cooperatives*, 103 F.3d 888 (9th Cir. 1996).  There is no known conflict with their state's sovereignty.  Nevada has an interest in adjudicating disputes affecting its citizens.  As the agreement is to be governed by the laws of Nevada, the most efficient resolution of this dispute is in Nevada; Plaintiff's witnesses are in Nevada and Defendants have able American counsel, including in Nevada.  Nevada is important to Plaintiff, as it is where it is based and is most convenient to it.  The Court should not give particular weight to any claimed inconvenience on the part of Defendants, either.   "Modern advances in communications and transportation have significantly reduced the burden of litigating in another country."  *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988).[2] Defendants have not offered an alternative forum.  Thus, the exercise of jurisdiction would be reasonable.

---

[2] One can only assume that the expense of international litigation has only lessened in the 27 years since *Sinatra*.

RANDAZZA | LEGAL GROUP

### 3.2 Alternatively, Defendants are Subject to This Court's Jurisdiction Under FRCP 4(k)(2)

Fed. R. Civ. P. 4(k)(2) provides that, for a claim arising under federal law, service on a defendant establishes personal jurisdiction if: "(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." *See Getz v. Boeing*, 654 F.3d 852, 858-59 (9th Cir. 2011); *see also Elan Microelectronics Corp. v. Pixcir Microelectronics Co.*, 2012 U.S. Dist. LEXIS 19255, *6 (D. Nev. Feb. 16, 2012). As Defendants correctly point out in their Motion to Dismiss, "[t]he due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between the [defendants] and the forum state, we consider **contacts with the nation as a whole**." *Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 462 (9th Cir. 2007) (emphasis added). Defendants' arguments following this recitation of law, however, are based on misrepresentations to the Court and do not withstand scrutiny.

The first prong is easy to dispense with: AMA's claims arise under a federal statute, the Copyright Act. U.S. district courts have original and exclusive jurisdiction over Copyright Act claims. *See* 28 U.S.C. § 1338(a).

### 3.2.1 If Defendants Are Not Subject to Jurisdiction in Nevada Specifically, they are Beyond the Reach of Any State Court of General Jurisdiction

AMA discusses in Section 3.1, *supra*, why Defendants are subject to personal jurisdiction in the State of Nevada. If the Court disagrees with AMA, however, then there is no other known individual state with which Defendant has sufficient minimum contacts. To AMA's knowledge, Defendants do not currently own any other property or assets located in the United States, nor does

RANDAZZA | LEGAL GROUP

AMA have any evidence of commercial or other activity specifically directed to any given state more prominently than Nevada.

Rule 4(k)(2) allows a foreign defendant to concede jurisdiction in an alternate state, with the plaintiff then having to support his chosen forum.  It is the defendant's burden to establish an alternative forum, and the mere possibility that another state may be more appropriate is of no effect if the defendant does not request a different venue.  *See Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007) quoting *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001).  Defendants have not done this, waiving their ability to concede jurisdiction in another state.  Accordingly, if AMA can show that jurisdiction is proper in the United States under Rule 4(k)(2), then its choice of forum prevails.

### 3.2.2 Exercising Jurisdiction Over Defendant is Consistent With U.S. Law

As explained above, the 9th Circuit employs a three-part test to determine whether a court has personal jurisdiction over a defendant: (1) purposeful availment or direction; (2) "but for" causation as to the defendant's contacts; and (3) reasonableness.  *See Schwarzenegger*, 374 F.3d at 802.  Defendants erroneously deny each of these parts.

#### 3.2.2.1 Defendants purposefully directed activity towards the United States

AMA's videos, as produced and distributed, display AMA's trademarks for identification and branding purposes.  (*See* **Exhibit 1**, Declaration of Adam Silverman ("Silverman Dec."), at ¶2.)  Many of these marks are federally registered with the United States Patent and Trademark Office.  (*See* Silverman Dec. at ¶3.)  The most cursory online search of the USPTO's database would reveal that AMA, a Nevada company, owned the content Defendants were infringing.  Defendants undoubtedly knew that it was not theirs and that posting

1  it was unlawful.   After all, they specifically entered into the Settlement

2  Agreement because of a claim of infringement.

3       The number of visitors to a website from a particular forum is relevant to

4  the express aiming inquiry.  *See Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d

5  1218, 1230 (9th Cir. 2011).   Courts in this circuit do not hesitate to subject a

6  defendant to jurisdiction in the U.S. where that Defendant: (1) has contacts with

7  the U.S., such as vendors; (2) receives a "substantial amount of traffic from

8  United States residents"; and (3) profits from advertising targeting U.S. residents.

9  *Cybernet Entertainment, LLC v. IG Media, Inc.*, Case No. 2:12-cv-01101-SRB, Doc.

10 # 32, at 14 (D. Ariz. Nov. 30, 2012); see *also Quokka Sports, Inc. v. Cup Int'l, Ltd.*,

11 99 F. Supp. 2d 1105, 1111 (N.D. Cal. 1999) (finding jurisdiction pursuant to Rule

12 4(k)(2) where defendants used a U.S. registrar and featured advertising from U.S.

13 companies on their website).  Each of those factors is present here.

14      In this case, Defendants' express aiming is targeted to the U.S. as a whole.

15 Although <serviporno.com> is in Spanish by default, clicking on the flag button in

16 the upper right corner of the web site shows the U.S. flag as the first option, and

17 it redirects to <bubbaporn.com>.   *See* **Exhibit 2**, Declaration of Trey Rothell

18 ("Rothell Dec."), at ¶¶2-4.[3]  BubbaPorn looks identical to the Serviporno site in

19 virtually all respects.  (*See id.* at ¶¶4-5.)  In fact, an Internet user would likely not

20 realize that he had been taken to another website.

21      Defendants specifically announced their intent to target the "American

22 market."  (Doc. No. 9-1 at 3.)  The Spanish site is just a "test tube" in which they

23 lose money.  (*Id.* at 5.)  The main <serviporno.com> site contains a link titled

24 "DMCA – Copyright," in English, wherein an American DMCA agent is identified.

25 (*See* Rothell Dec. at ¶¶ 6 & 9.)  It also contains a link titled "2257 Statement"

26

27  [3]  At the time the complaint was filed, the American redirect domain name was
     <todayporn.com>.  (*See* Doc. No. 9-3 at 5.)

RANDAZZA | LEGAL GROUP

regarding 18 U.S.C. § 2257, which is also in English.  (*See id.* at ¶¶ 6 & 10.)  The "Términos y Condiciones" link leads to an English Terms and Conditions agreement, as does the privacy policy link, "Politica de Privacidad." (*See id.* at ¶¶ 6 & 8.)  Notably, there is no reference to the European Union Data Protection Directive (Directive 95/46/EC), or any other nation's laws, beyond the laws of the United States, referenced above.  (*See id.* at ¶8.)

Defendants' Terms of Service explicitly mention U.S. intellectual property laws, stating that "[t]he Content contained on the Serviporno [sic] . . . are owned by and/or licensed to Serviporno, subject to copyright and other intellectual property rights under **United States, Canada and foreign laws and international conventions**."   (*See* Terms of Service, attached as **Exhibit 3**) (emphasis added).)   Note that jurisdictions other than the United States and Canada are an afterthought in these terms.  In fact, no other countries are even mentioned by name.  Defendants' Terms of Service shows an acute awareness of the applicability of U.S. law, and that the site's operators are primarily concerned with U.S. visitors and content owned by U.S. companies.

Moreover, advertising on the web site is in English.  (*See* Rothell Dec. at ¶7.)  In fact, the link titled "Parental Control" leads to an English-language site to assist parents in blocking adult sites (*see id*. at ¶11); if the site were not targeted toward the United States, it would not be concerned only with impressionable American youths.  Defendants are directing their services primarily not just to English-speaking countries generally, but to the United States specifically.

In light of these facts, it is not credible to assert that a website with hundreds of thousands, if not millions, of U.S. visitors whose videos are **hosted on a server located in the U.S.** does not constitute purposeful direction.

### 3.2.2.2   AMA's claims arise from Defendants' activities targeted at the U.S.

The second prong of the *Schwarzenegger* analysis is satisfied as to Rule 4(k)(2) for the same reasons it is satisfied for purposes of establishing Nevada's personal jurisdiction over Defendants, namely that they implicitly consented to jurisdiction in Nevada by agreeing to arbitrate there.  AMA's case under Rule 4(k)(2) is even stronger, however, as Defendants operate a website that is designed to attract U.S. visitors and U.S.-created content.  They knew or should have known that the infringing content they uploaded was owned by a U.S. entity.  Accordingly, the infringing activities directed towards the U.S. as a whole are the "but for" cause of AMA's suit.

In a series of cases highlighting claims brought by an entity named "Fraserside IP, L.L.C." in the Northern District of Iowa, Defendants cite to *Fraserside IP, L.L.C. v. Youngtek Solutions, Ltd.*, 2013 U.S. Dist. LEXIS 3779 (N.D. Iowa Jan. 10, 2013).[4]  In the *Youngtek Solutions* decision, it was notable that the servers were not located in the United States and there were no agents for service of process.  *See id.* at * 46-47.  Here, Defendants' servers have been in Texas and California, and they have an American DMCA agent.  In *Fraserside IP L.L.C. v. Netvertising Ltd.*, 2012 U.S. Dist. LEXIS 180949, *35-36 (N.D. Iowa Dec. 21, 2012), allegations that 16.7% of users were from the United States and the use of a California company as registrar, *inter alia*, were sufficient allegations to warrant jurisdictional discovery.  Similarly, the allegations in *Fraserside IP L.L.C. v. Letyagin*, 885 F. Supp. 2d 906, 921 (N.D. Iowa 2012), including being hosted in

---

[4] *Fraserside IP L.L.C. v. Hammy Media, LTD*, 2012 U.S. Dist. LEXIS 5359 (N.D. Iowa Jan. 17, 2012) and *Fraserside IP L.L.C. v. Youngtek Solutions Ltd.*, 2012 U.S. Dist. LEXIS 98041 (N.D. Iowa July 16, 2012) did not involve a claim of jurisdiction under Rule 4(k)(2).

RANDAZZA | LEGAL GROUP

1   Ohio and having U.S. contacts for the purpose of displaying the plaintiff's films,

2   were sufficient to warrant jurisdictional discovery.

3       Defendants, themselves or through their agents, have located the servers

4   used to host and distribute infringing videos in Arizona, Texas and California.

5   (*See* Doc. No. 9 at ¶ 21; **Composite Exhibit 4**.)  "For purposes of **personal**

6   **jurisdiction**, the actions of an **agent** are attributable to the principal." *Sher v.*

7   *Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990).  Although Defendant Urrestarazu

8   denies knowledge of such servers due to a Content Delivery Network from its

9   hosting company, LeaseWeb (Doc. No. 8 at ¶¶ 10-11), there is no evidence

10  Defendants prohibited their vendors from utilizing American servers.  Moreover,

11  LeaseWeb fully advises its clients that it has a data center in San Jose, California,

12  on which it may host the services it provides to Defendants, and that it has

13  resources in its network map throughout the United States.  (*See* **Exhibit 5**;[5] *see*

14  *also* **Exhibit 6**.[6])  Further, the LeaseWeb CDN, as an agent of Defendants, tests

15  the availability and latency of the service it provides to Defendants *every five*

16  *minutes* to San Jose, California, and Washington, D.C., (i.e., reaching out to the

17  U.S. 576 times per day, 210,240 times per year) being two of only five locales

18  tested, and Defendants receive a monetary credit when there is a service

19  degradation to those locations.  (*See* **Exhibit 7**.[7])  By testing availability and

20  latency to both the East and West Coasts of the United States, with the United

21  States representing the largest percentage of the locations tested, users in the

22  United States are directly targeted and Defendants can foresee having to

23

24  [5]  Available at: <https://www.leaseweb.com/platform/data-centers> (last
     accessed February 4, 2016).

25  [6]  Available at: <https://www.leaseweb.com/sites/default/files/Network_Map_
     2015_-_LeaseWeb_-_Web.pdf> (last accessed February 4, 2016).

26  [7]  Available at: <https://www.leaseweb.com/sites/default/files/Legal/CDN_ENG
     _B2B_v2014.3%20Support%20and%20Service%20Level%20Schedule.pdf> (last

27  accessed February 4, 2016).

defend a lawsuit there.  (*See id.*; contrast Doc. No. 13 at 14-15 and cases cited.)  As the United States receives the plurality of the testing of Defendants' websites, there are sufficient contacts.  As the agent, LeaseWeb, would thus be subject to personal jurisdiction in the United States based upon these contacts, so, too, are Defendants as its principals.  *See Theo. H. Davies & Co. v. Republic of the Marshall Islands*, 174 F.3d 969, 974 (9th Cir. 1998) ("In determining the sufficiency of a defendant's contacts, it is not only defendant's activities in the forum, but also actions relevant to the transaction by an **agent** on defendant's behalf, which support **personal jurisdiction**.") (quotations omitted).

### 3.2.2.3   This Court's exercise of jurisdiction over Defendants is reasonable

This Court's exercise of jurisdiction over Defendants is reasonable for the same reasons as discussed in Section 3.1, *supra*.  For Rule 4(k)(2) purposes, however, it is even more reasonable for a U.S. court to exercise jurisdiction over Defendants.  They operate a website that is designed to infringe content made by U.S. companies and attract U.S. visitors.  While they may reside in Spain, Defendants have already displayed an acute awareness of a likelihood of being haled into court in the United States for violation of its intellectual property laws, having agreed to arbitrate in Nevada to avoid a suit in Texas.  (*See* Doc. No. 9-2 at ¶20.1.)  There is nothing unreasonable about making them appear in a U.S. court when they have targeted so much activity at the United States.

### 3.3   Counts 2-8 Should Not Be Dismissed

As a general proposition, the parties agree that Counts 2-8 are subject to the agreement to arbitrate.  In his Report and Recommendations regarding Plaintiff's Motion to Compel Arbitration, Magistrate Judge Foley agrees. (*See* Doc. # 21, at 5-6.)  Judge Foley also recommends that this case be stayed rather than dismissed due to Plaintiff's allegations that (1) "Defendants have

previously failed to properly arbitrate this matter"; and (2) Defendants "have taken actions to divest (U.S.) courts of jurisdiction." (*Id.* at 6.)  Plaintiff agrees with the Report and Recommendation, as it will provide Plaintiff with a vehicle for relief should Defendants continue their previous bad faith refusals to arbitrate this dispute in good faith.

While this matter is arbitrated,[8] the the Court may stay this proceeding pursuant to 9 U.S.C. § 3; accord *Morris v. Morgan Stanley & Co.*, 942 F.2d 648, 653 (9th Cir. 1991).  As recommended by Magistrate Judge Foley, that is the appropriate outcome here.   Defendants fail to properly address Plaintiff's request for a stay pending arbitration.  (*See* Doc. No. 10 at 13.)  As Plaintiff discussed in its motion, 9 U.S.C. § 3 suggests that the instant action should be stayed.  Although the Ninth Circuit, in *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988), indicated that a stay is a matter of discretion, it subsequently held that "§ 3 requires a stay of the trial where a valid arbitration agreement is operative."  *Morris v. Morgan Stanley & Co.*, 942 F.2d 648, 653 (9th Cir. 1991), citing *The Anaconda v. American Sugar Co.*, 322 U.S. 42, 44 (1943).  Courts in this Circuit agree that a stay is mandatory.  *See SEIU, Local 707 v. Connex-ATC*, 2006 U.S. Dist. LEXIS 78606, *6 (N.D. Cal. Oct. 18, 2006) ("pursuant to § 3 of the FAA, the court is required to **stay**, not dismiss, the action pending **arbitration**.") citing *Morris v. Morgan Stanley & Co.*, 942 F.2d at 653-654.  More recently, the Second Circuit confirmed the mandatory nature of the stay.  *Katz v. Cellco P'ship*, 794 F.3d 341 (2d Cir. 2015).

---

[8]  In their motion, Defendants raise the question of the arbitration service provider.  Doc. No. 13 at 8.  They also raise this in response to the motion to compel arbitration Doc. No. 14 at 5-7.  If this Court sees fit to appoint the Honorable Philip Pro as arbitrator, Plaintiff has no objection to using JAMS, one of Defendants' preferred arbitration services.

Defendants argue that "the only option open to the Court is to dismiss the complaint in its entirety in favor of arbitration" (Doc. No. 13 at 4), yet they are silent as to 9 U.S.C. § 3, let alone whether it is mandatory or discretionary. The plain language and the more recent cases mandate a stay. As recommended by Magistrate Judge Foley, a stay, not dismissal, should enter upon referral to arbitration. This is consistent with statutory and case law and provides Plaintiff a vehicle for relief should Defendants attempt to frustrate the arbitration.

Even if the stay were discretionary, Defendants give no reason why a stay should not enter. In contrast, Plaintiff argued (and Judge Foley agreed) that Defendants' actions to frustrate prior arbitration and this lawsuit may require further oversight and intervention by this Court, and the retention of jurisdiction suits those purposes. By way of example, although Defendants do not presently argue arbitrability, and seem to recognize that it is a question to be left to the Court, accord *Gibbs-Bolender v. CAG Acceptance, LLC*, 2015 U.S. Dist. LEXIS 20228, *7-9 (D. Nev. Feb. 18, 2015), Defendants nonetheless argue that Plaintiff has not met conditions precedent. Defendants' procedural machinations previously thwarted arbitration, presumably waiving the requirement to arbitrate, by acting inconsistently with the right to arbitration. *See Britton v. Co-op Banking Group*, 916 F.2d 1405, 1412 (9th Cir. 1990). Defendants could have moved to compel arbitration, but chose not to do so. Even now, Defendants misrepresent that Plaintiff raised the question of whether a condition precedent was met.[9] (*See* Doc. No. 13 at 7-8, citing *BG Group PLC v. Republic of Arg.*, 134 S. Ct. 1198, 1207 (2014).) To the contrary, it was Defendants who first asked the

---

[9] Defendants also misrepresent that Plaintiff argues that direct uploading is not covered by the agreement to arbitrate. (*See* Doc. No. 13 at 6.) Instead, Plaintiff observed that ¶ 3.1 only applied to works uploaded by a third party to rebut the claim that Plaintiff did not meet a condition precedent. (*See* Doc. No. 10 at 10-11.) Plaintiff agrees that direct infringement claims are actionable.

Court to dismiss the case "for the plaintiff's failure to meet the conditions precedent to arbitration." (Doc. No. 7 at 8-9.).[10]

Defendants would not be prejudiced by a stay; once the arbitrator reaches a confirmable decision, Counts 2-8 could then be dismissed. To ensure Plaintiff is not prejudiced, a stay, rather than a dismissal is warranted, should the merits of this matter somehow escape adjudication in arbitration.

### 3.4   This Suit Is Not Frivolous

There is nothing frivolous about this lawsuit, and Defendants are not entitled to their fees and costs.  Moreover, Defendants' Motion to Dismiss invokes the fee shifting provision of the Settlement Agreement.  (*See* Doc. No. 9-2 at ¶ 16.0.)  It provides that the prevailing party shall recover costs and reasonable attorneys' fees if the non-prevailing party's "claim or defense of a claim was frivolous, vexatious, or undertaken in bad faith."  *Id.*  The only argument made

---

[10] This argument of AMA's failure to meet conditions precedent is nonetheless disingenuous.  Defendants agreed to arbitrate. (*See* Doc. No. 7-1, 8 ("Ron, We agree to arbitrate . . . Val Gurvits").) They even admit they "invited [Plaintiff] to initiate arbitration," though they disputed the merits of the claims. (Doc. No. 7 at 19.)  Plaintiff has otherwise substantially complied with the Settlement Agreement.  It sent at least 12 notifications compliant with ¶ 3.1 of the Settlement Agreement and gave notice by letter of December 23, 2014 and January 6, 2015. (*See* Doc. No. 8 at *Exhibit 1*; *see also* **Exhibits 8 & 9**.)  "[W]hen a letter provides notice equivalent to a list of representative works that can be easily identified by the service provider, the notice substantially complies with the notification requirements." *ALS Scan, Inc. v. RemarQ Cmtys., Inc.*, 239 F.3d 619, 625 (4th Cir. Md. 2001).  Courts in this Circuit have approved of the holding in ALS Scan. *See Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1107 (W.D. Wash. 2004); *see also Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1112 n.4 (9th Cir. 2007).  Thus, as Plaintiff otherwise substantially complied with the DMCA, it complied with the Settlement Agreement's pre-suit conditions.  Unfortunately, Defendants have not held up their end of the agreement and have taken measures to avoid infringement.  Therefore, Plaintiff was otherwise justified in commencing arbitration and the instant litigation.  To the extent there was any deficiency, such was waived when Defendants responded to the subpoena. (*See* Doc. No. 10 at 11.)

RANDAZZA | LEGAL GROUP

by Defendants is that this matter should have been arbitrated, thus the instant action must be "frivolous, vexatious, and undertaken in bad faith."  (Doc. No. 13 at 17.)  Though they repeat that mantra several times, they offer no evidence of frivolity, vexatiousness, or bad faith.  Moreover, Magistrate Judge Foley's Report and Recommendations do not accuse Plaintiff of acting improperly; rather, he recommended that Plaintiff's Motion be granted.

Defendants appear to have abandoned their prior arguments that the alleged failure to meet arbitration pre-conditions was the conduct warranting fees.  (Compare Doc. No. 10-8 at 11-12.)  Despite moving the goalposts,[11] Defendants are not entitled to costs or fees.  Plaintiff attempted arbitration; only after Defendants intentionally frustrated these attempts, constituting waiver, did Plaintiff bring this proceeding.  And, once it was apparent that Defendants reversed course to argue that the matter should be arbitrated, Plaintiff amended the complaint to ensure that some adjudication on the merits, either in arbitration or before this Court, would occur.

Moreover, should this matter be referred to arbitration, as the Magistrate Judge recommends, Plaintiff, not Defendants, will have been the prevailing party.  Defendants themselves never sought to compel arbitration.

Even if this Court ultimately disagrees, that alone does not evidence frivolity, vexatiousness, or bad faith.[12]  Defendants cite to *Smarasek v. Nevada*, 2014 U.S. Dist. LEXIS 128731 (D. Nev. Apr. 16, 2014) for the proposition that "[a]n action becomes frivolous when the result appears obvious or the arguments are wholly without merit." (*See* Doc. No. 7 at 19.)  However, that quotation is directly

---

[11]  As Defendants agree that arbitration is proper, the pre-condition argument is without merit and demonstrates that the arbitration (and this subsequent litigation of those very claims) was brought in good faith.

[12]  Arguing that Plaintiff's counsel is knowledgeable is evidence of nothing.  The Solicitor General of the United States regularly loses arguments as well.

from the Ninth Circuit. *See Smarasek* at * 17 quoting *Galen v. Cnty of Los Angeles*, 477 F.3d 652, 666 (9th Cir. 2007). But, in *Galen*, the Ninth Circuit observed that the fact that Mr. Galen "lost at summary judgment does not render his case per se frivolous, unreasonable, or without foundation." 477 F.3d at 667. There had not been any controlling Ninth Circuit or Supreme Court authority that demonstrated frivolity; here, the controlling authority, *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1012-1013 (9th Cir. 2005), suggests that arbitration had been waived. Plaintiff had suffered delay and costs, as well as the potential loss of evidence, due to Defendants' pattern of spoliation. In parallel circumstances, the Ninth Circuit found that delay and litigation costs constituted prejudice and supported a finding of waiver. *See Brown v. Dillard's, Inc.*, 430 F.3d at 1012-1013. Even prior to amendment, Plaintiff was not compelled "to honor an arbitration agreement of which [a defendant] is itself in material breach." *Id*. at 1006. This litigation has always been meritorious and there is no evidence of bad faith. Thus, no fees or costs are warranted.

WHEREFORE Plaintiff respectfully requests that the Motion to Dismiss be denied.


Dated February 8, 2016.                  Respectfully Submitted,

                                         RANDAZZA LEGAL GROUP, PLLC

                                         */s/ Ronald D. Green*
                                         Marc J. Randazza (NV Bar No. 12265)
                                         Ronald D. Green (NV Bar No. 7360)
                                         4035 S. El Capitan Way
                                         Las Vegas, NV 89147
                                         Tel: (702) 420-2001
                                         Fax: (702) 420-2003
                                         ecf@randazza.com

                                         *Attorneys for Plaintiff,*
                                         *AMA Multimedia, LLC*

Case No. 2:15-cv-01673-JCM-GWF

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 8, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing document being served via transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully Submitted,

Employee,
Randazza Legal Group, PLLC